## COLLINS v. THE STATE OF TEXAS.

**ERROR TO THE COURT OF CRIMINAL APPEALS OF THE STATE OF TEXAS.**

No. 165. Argued January 25, 26, 1912.—Decided February 19, 1912.

Where the party attacking the constitutionality of a statute has not suffered, the court will not speculate whether others may suffer.

Under its police power a State may constitutionally prescribe conditions to insure competence in those practising the healing art in its various branches, including those in which drugs are not administered—such as osteopathy. *Dent* v. *West Virginia*, 129 U. S. 114.

The Texas statute of 1907, establishing a Board of Medical Examiners, and conditions under which persons will be licensed to practise osteopathy, does not deprive one who refuses to apply for a license thereunder of his property without due process of law, or deny him the equal protection of the law.

In this case the writ of error to review a judgment denying plaintiff in error his release on *habeas corpus* is not dismissed but determined on the merits, as the single constitutional question goes to the jurisdiction of the state court, and has arisen as plainly as it ever will. *Bailey* v. *Alabama*, 211 U. S. 452, distinguished.

THE facts, which involve the constitutionality of certain provisions of the statute of Texas establishing the Board of Medical Examiners, are stated in the opinion.

*Mr. Millard Patterson,* with whom *Mr. Jo. F. Woodson,* was on the brief, for plaintiff in error:

The statute deprives plaintiff in error of his property without due process of law, and denies him the equal protection of the law.

The last two clauses of the Fourteenth Amendment are restrictions upon the exercise of arbitrary and capricious power over persons and property when exercised by the State through any of its agencies. *Ex parte Vir-*

*ginia,* 100 U. S. 339; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Holden* v. *Hardy,* 169 U. S. 366; *Barbier* v. *Connolly,* 113 U. S. 27; *Nelson* v. *The State Board of Health,* 57 S. W. Rep. 504; *State* v. *Mylod,* 40 Atl. Rep. (R. I.) 753; *State* v. *Biggs,* 46 S. E. Rep. 401 (N. Car.); *State* v. *Liffring,* 55 N. E. Rep. 168 (Ohio); *State* v. *McKnight,* 42 S. E. Rep. 580 (N. Car.); *Bennett* v. *Ware,* 61 S. E. Rep. 548; *State* v. *Biggs,* 46 S. E. Rep. 401.

The words "bona fide" and "reputable" in the description of the medical school of which one is to be a graduate mean, as stated in section seven of the act, that it shall be a school having a course of instruction as high as the better class of medical schools in the United States.

The acts, under the facts of this case, discriminate against plaintiff in error as an osteopath, and violate the Fourteenth Amendment, in that they discriminate in favor of nurses who practise not only nursing, but treat minor ailments; in favor of masseurs who, in their particular spheres of labor, treat diseases, light disorders and injuries, and charge therefor money and other compensation; and also discriminate in favor of druggists, who prescribe remedies and charge therefor.

If Chapter 123 applies to an osteopath who practises only as such, it discriminates against osteopaths in providing for the issuance of a verification license to legal practitioners of medicine who were practising under the provisions of previous laws, or under diplomas of reputable and legal colleges of medicine, there being no provision in the law for the issuing of a verification license to osteopaths.

The acts are in violation of the Fourteenth Amendment in discriminating against osteopaths in requiring that they should have a diploma from a bona fide medical school before they can present themselves for examination before the Medical Board of Examiners for a license to prac-

tise, and in requiring them to accept a license to practise medicine.

To require plaintiff to obtain a diploma from a medical college as defined in said act, and to require him to pass an examination in the scientific branches of medicine before he could be granted a license to practise osteopathy is a direct discrimination in favor of those medical schools requiring a knowledge of materia medica, therapeutics, chemistry and the practice of medicine, in contravention of the Fourteenth Amendment. *Watson* v. *Maryland*, 218 U. S. 173; *Reetz* v. *Michigan*, 188 U. S. 505, distinguished.

*Mr. Jewell P. Lightfoot*, Attorney-General of Texas, with whom *Mr. James D. Walthall, Mr. C. E. Lane, Mr. James N. Wilkerson, Mr. Timothy J. Scofield* and *Mr. Frank J. Loesch* were on the brief, for defendant in error:

The acts do not violate the privileges or immunities clause; that provision applies only to those privileges and immunities which are incident to citizenship of the United States as distinguished from citizenship of the several States. *Slaughter House Cases*, 16 Wall. 36, 74; *Bartmeyer* v. *Iowa*, 18 Wall. 129; *Miller* v. *Texas*, 153 U. S. 535; *Orr* v. *Gilman*, 183 U. S. 278; *Re Kemmler*, 136 U. S. 436; *United States* v. *Cruikshank*, 92 U. S. 542; *United States* v. *Reese*, 92 U. S. 214; *Hall* v. *DeCuir*, 95 U. S. 485; *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Presser* v. *Illinois*, 116 U. S. 252.

The right to practise medicine without regulation is not one of such privileges and immunities. *Supra* and *Dent* v. *West Virginia*, 129 U. S. 114.

The acts under consideration do not violate the due process clause. They were passed under the police power of the State, and are a proper exercise of that power in scope and purpose. The details of such legislation rest primarily within the discretion of the state legislature. This court can only interfere when fundamental rights guaranteed un-

der the Federal Constitution are violated by such statutes. *Watson* v. *Maryland,* 218 U. S. 173; *Dent* v. *West Virginia,* 129 U. S. 114; *Reetz* v. *Michigan,* 188 U. S. 505; *Hawker* v. *New York,* 170 U. S. 189; *Meffert* v. *Packer,* 195 U. S. 625; *Williams* v. *Arkansas,* 217 U. S. 79; *People* v. *Apfelbaum,* 251 Illinois, 18; *State* v. *Smith,* 135 S. W. Rep. 465; *Parks* v. *State,* 159 Indiana, 211; *Feller* v. *State Examiners,* 34 Minnesota, 391; *Burroughs* v. *Webster,* 150 Indiana, 607; *Bragg* v. *State,* 134 Alabama, 165; *State* v. *Buswell,* 40 Nebraska, 158; *Little* v. *State,* 60 Nebraska, 749; *State* v. *Gravett,* 65 Oh. St. 289; *State* v. *Marble,* 72 Oh. St. 21; *People* v. *Allcutt,* 102 N. Y. Supp. 678, aff'd 189 N. Y. 517; *People* v. *Mulford,* 125 N. Y. Supp. 680, aff'd 202 N. Y. 624; *People* v. *Reetz,* 127 Michigan, 87; *People* v. *Phippin,* 70 Michigan, 6; *State* v. *Miller,* 146 Iowa, 521; *State* v. *Adkins,* 145 Iowa, 671; *State* v. *Wilhite,* 132 Iowa, 226; *State* v. *Edmunds,* 127 Iowa, 333; *State* v. *Heath,* 125 Iowa, 585; *State* v. *Bair,* 112 Iowa, 466; *Foster* v. *Police Commissioners,* 102 California, 483; *Scholle* v. *State,* 90 Maryland, 729; *State* v. *Yegge,* 19 S. Dak. 234.

The provisions of this statute are not such as result in any arbitrary deprivation of plaintiff in error's liberty or property, or of his right to engage in a lawful calling. Cases *supra* and *Commonwealth* v. *Porn,* 196 Massachusetts, 326; *Bandel* v. *Dept. of Health,* 193 N. Y. 133; Mc-Gehee on Due Process of Law, 52.

The act is not void as exceeding the police power of the State on account of any menace to the public, such as the danger of being exposed to the administration of drugs by persons not skilled in their administration.

This court is not concerned with the wisdom or policy of the act, so long as the act fairly secures or tends to secure the objects sought to be attained by it and is not patently unreasonable. *Otis* v. *Parker,* 187 U. S. 606.

The act does not violate the equal protection clause.

The state legislature has the power to make regulations

of the character involved herein, and the details of such legislation rest primarily within the discretion of the state legislature.  Cases *supra.*

The classification made in the statute is not arbitrary, unreasonable or oppressive, and was within the legislative power of the State, as having a fair relation to the objects of the statute.  Within the sphere of its operation it affects alike all persons similarly situated.

Plaintiff in error does not, and cannot on the record in this case, contend that the Board of Medical Examiners of Texas has been guilty of any unfair or unjust action toward him.  His contentions are based upon fancied inequalities of the statute which arise only on his own theory of how the act would have been construed by the board had he in fact requested from it authority to practise, or the right to take an examination as provided by the act.

While the construction of the act by the Court of Criminal Appeals of the State of Texas may not, perhaps, be in all respects conclusive upon this court, that construction is one toward which this court will lean.  Cases *supra,* and see *Atchison &c. Railroad Co.* v. *Matthews,* 174 U. S. 96, 101; *Marchant* v. *Penna. R. R. Co.,* 153 U. S. 380; *Baltimore Traction Co.* v. *Belt R. Co.,* 151 U. S. 137; *Minneapolis &c. R. Co.* v. *Minnesota,* 193 U. S. 53; McGehee on Due Process, 37, 40, 306, note 7.

The act will be taken in this court as construed by the Court of Criminal Appeals of the State of Texas to include in the "practise of medicine" the practise of osteopathy.  57 Tex. Crim. 2.

The act must also be taken as not in conflict with the constitution of Texas.  *Reetz* v. *Michigan,* 188 U. S. 505.

The object of the statute is to protect the sick and afflicted from the pretensions of the ignorant, the unskilled and the unscrupulous.  The statute was passed to protect the health and promote the welfare of the people of Texas,

and to protect them from imposition and fraud.  It seeks
to prohibit and punish fraud, deception, charlatanry and
quackery in the practice of healing, to prevent empiricism,
and to bring the practice under such control that, as far
as possible, the ignorant, the unscientific, the unskilled,
and the unscrupulous practitioner may be excluded.  Cases
*supra; State* v. *Oredson,* 96 Minnesota, 509; *O'Neil* v.
*State,* 115 Tennessee, 427; *People* v. *Blue Mountain Joe,*
129 Illinois, 370; *State* v. *Bair,* 112 Iowa, 466; *Common-
wealth* v. *Jewelle,* 199 Massachusetts, 558; *People* v. *Phip-
pin,* 70 Michigan, 6, 19.

In construing the act consideration must be given to
the purpose of the legislature, and to the mischief intended
to be guarded against.  Whether it is fair and reasonable
and a valid exercise of the police power, or arbitrary and
capricious must be determined in the light of the object
sought to be attained by the act.  1 Kent's Comm. 462; 2
Sutherland's Stat. Const. (2d ed. by Lewis), §§ 370–376,
456.

There is no vested right to practise either the medical
or legal profession, free from supervision and regulation
by the State.  *Broadwell* v. *Illinois,* 16 Wall. 130; *Reetz* v.
*Michigan,* 188 U. S. 505; *Hawker* v. *New York,* 170 U. S.
189; *People* v. *King,* 110 N. Y. 418; *People* v. *Phippin,* 70
Michigan, 6; 22 Am. & Eng. Ency. of Law (2d ed.), 9,
780.

The statute does not infringe the provisions of the *ex
post facto* clause; see cases *supra; Eastman* v. *State,* 109
Indiana, 281; *State* v. *Creditor,* 44 Kansas, 568; *Craig* v.
*Medical Examiners,* 12 Montana, 211; *State* v. *Coleman,*
64 Oh. St. 377.

This statute is not an unconstitutional interference
with vested rights.  *Allopathic State Board* v. *Fowler,* 50
La. Ann. 1358; *People* v. *Moorman,* 86 Michigan, 433;
*Williams* v. *People,* 121 Illinois, 87; *Thompson* v. *Staats,*
15 Wend. (N. Y.) 395; *Hewitt* v. *Charier,* 16 Pick. (Mass.)

395; *State* v. *Hale*, 15 Missouri, 606; *Bibber* v. *Simpson*, 50 Maine, 181; *Dankworth* v. *State*, 136 S. W. Rep. 788.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a writ of error to the Texas Court of Criminal Appeals upon a judgment denying the plaintiff in error a release by habeas corpus. The plaintiff in error is held upon an information charging him with practising medicine for money by treating a named patient for hay fever by osteopathy, without having registered his authority as required by a Texas statute of April 17, 1907, c. 123 (Gen. Laws, 1907, p. 224). He denies the constitutionality' of the act.

The statute establishes a Board of Medical Examiners and requires "all legal practitioners of medicine in this State, who, practising under the provisions of previous laws, or under diplomas of a reputable and legal college of medicine, have not already received license from a State Medical Examining Board of this State" to prove their diplomas, or existing license, or exemption existing under any law; whereupon they are to receive a verification license. § 6. By § 7 applicants not licensed under § 6 must pass an examination, conditioned among other things on their being graduates of "bona fide reputable medical schools;" schools to be considered reputable "whose entrance requirements and courses of instruction are as high as those adopted by the better class of medical schools of the United States, whose course of instruction shall embrace not less than four terms of five months each." By § 9 the examinations are to be fair to every school of medicine, are to be conducted on the scientific branches of medicine only, and are to include anatomy, physiology, chemistry, histology, pathology, bacteriology, physical diagnosis, surgery, obstetrics, gynecology, hygiene, and

medical jurisprudence. Those who pass are to be granted licenses to practise medicine. By § 10 nothing in the act is to be construed to discriminate against any particular system, and the act is not to apply to dentists legally registered and confining themselves to dentistry, nurses who practise only nursing, masseurs, or surgeons of the United States Army, Navy, &c., in the performance of their duties.

The only other material sections of the act are §§ 13 and 14, the former of which declares that "any person shall be regarded as practising medicine within the meaning of this act. . . . (2) Or who shall treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method or to effect cures thereof and charge therefor, directly or indirectly, money or other compensation." By § 14 any person practising medicine in violation of the act is punished by fine and imprisonment, and is not to recover anything for the services rendered.

The facts charged against the plaintiff in error are admitted. It also is admitted that before the passage of the statute he had spent $5,000 in fitting up his place, and was deriving a net income from his calling of at least the same sum. He held a diploma from the chartered American School of Osteopathy, Kirksville, Missouri, after a full two years' course of study there, but it does not appear that he presented this diploma to the Board of Medical Examiners or attempted to secure either a verification license or license in any form. The Board in passing upon qualifications does not examine in therapeutics or materia medica, which, it will be observed, are not mentioned in the act. On these facts we are of opinion that the plaintiff in error fails to show that the statute inflicts any wrong upon him contrary to the Fourteenth Amendment of the Constitution of the United States. If he has not suffered we are not called upon to speculate upon other cases, or

to decide whether the followers of Christian Science or other people might in some event have cause to complain.

We are far from agreeing with the plaintiff in error that the definition of practising medicine in § 13 is arbitrary or irrational, but it would be immaterial if it were, as its only object is to explain who fall within the purview of the act. That it does, and of course we follow the Texas court in its decision that the plaintiff in error is included. It is true that he does not administer drugs, but he practises what at least purports to be the healing art. The State constitutionally may prescribe conditions to such practice considered by it to be necessary or useful to secure competence in those who follow it. We should presume, until the Texas courts say otherwise, that the reference in § 4 to the diploma of a reputable and legal college of medicine, and the confining in § 7 of examinations to graduates of reputable medical schools, use the words medicine and medical with the same broad sense as § 13, and that the diploma of the plaintiff in error would not be rejected merely because it came from a school of osteopathy. In short, the statute says that if you want to do what it calls practising medicine you must have gone to a reputable school in that kind of practice. Whatever may be the osteopathic dislike of medicines, neither the school nor the plaintiff in error suffers a constitutional wrong if his place of tuition is called a medical school by the act for the purpose of showing that it satisfies the statutory requirements. He cannot say that it would not have been regarded as doing so, because he has not tried. Dent v. West Virginia, 129 U. S. 114, 124.

An osteopath professes, the plaintiff in error professes, as we understand it, to help certain ailments by scientific manipulation affecting the nerve centres. It is intelligible therefore that the State should require of him a scientific training. Dent v. West Virginia, 129 U. S. 114; Watson v. Maryland, 218 U. S. 173. He like others

must begin by a diagnosis. It is no answer to say that in many instances the diagnosis is easy—that a man knows it when he has a cold or a toothache. For a general practice science is needed. An osteopath undertakes to be something more than a nurse or a masseur, and the difference rests precisely in a claim to greater science, which the State requires him to prove. The same considerations that justify including him justify excluding the lower grades from the law. *Watson* v. *Maryland,* 218 U. S. 173, 179, 180. Again, it is not an answer to say that the plaintiff in error is prosecuted for a single case. If the legislature may prohibit a general practice for money except on the condition stated, it may attach the same conditions to a single transaction of a kind not likely to occur otherwise than as an instance of a general practice. A distinction between gratuitous and paid for services was made in the Maryland statute sustained in *Watson* v. *Maryland,* 218 U. S. 173, 178. Finally, the law is not made invalid as against the plaintiff in error by the fact that he had an established business when the law was passed. *Dent* v. *West Virginia,* 129 U. S. 114. *Reetz* v. *Michigan,* 188 U. S. 505, 510.

The objections that prevailed against a writ of error like this in *Bailey* v. *Alabama,* 211 U. S. 452, do not exist here. There as here it was attempted to interrupt the ordinary course of a trial by habeas corpus, and there as here the State allowed the attempt and discharged the writ on the merits. But in that case it did not appear that the constitutional question relied upon had arisen or necessarily would arise, although afterwards it did. 219 U. S. 219. But here the facts are admitted, the question appears as plainly as it ever will, and is supposed to go to the jurisdiction of the court. Therefore we have discussed the case on the merits; perhaps more than it needed in view of the decisions cited and others that establish the right of the State to adopt a policy even upon

medical matters concerning which there is difference of opinion and dispute. *Hawker* v. *New York*, 170 U. S. 189; *Meffert* v. *Packer*, 195 U. S. 625; *Jacobson* v. *Massachusetts*, 197 U. S. 11. See also *Williams* v. *Arkansas*, 217 U. S. 79.

*Judgment affirmed.*