**BROWN v. BOARD OF TRUSTEES OF LA GRANGE INDEPENDENT SCHOOL DIST. et al.**

**No. 13317.**

United States Court of Appeals
Fifth Circuit.

Jan. 22, 1951.

Herman Wright, Houston, Tex., U. Simpson Tate, Dallas, Tex., Arthur J. Mandell, Houston, Tex., W. J. Durham, Dallas, Tex., for appellant.

Douglas W. McGregor, Houston, Tex., Miles L. Moss, LaGrange, Tex., for appellees.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges. .

HUTCHESON, Chief Judge.

Julius Brown, a negro, as plaintiff, brought this suit as a claimant for the benefit of himself, his oldest daughter, Vivian, and all other persons of Negro blood and African descent. The original complaint, filed April 15, 1948, and the amendment thereto, filed November 22, 1949, sought a declaratory judgment, that, in violation of the Fourteenth Amendment, he and they had been subjected to racial discrimination and deprived of civil rights, and an injunction restraining the defendants from continuing such discrimination and deprivation.

Particularized, the claim was that the defendants, The LaGrange Independent School District and the Members of its Board of Trustees, had discriminated generally against all those for whose benefit the suit was brought by failing to provide at and for the Randolph Colored High School, buildings, grounds, facilities, and courses of study equal, and not inferior, to those provided for white high school students, and particularly against his daughter by providing for whites, and not providing for her, a course in chemistry which she wished, and was old enough, to take.

The defendants denied the charges made against them and pleaded affirmatively that the educational facilities maintained by the District for the use of the colored, were and are substantially equal to those maintained for the use of the white, pupils.

In addition, they urged below, and reurge here, that plaintiff's pleading and his evidence showed, as matter of law, that plaintiff was without right to maintain this suit, and that it should be dismissed, because it appears from pleading and evidence, without contradiction or dispute, that whatever may be the fact as to any other or others, no right of plaintiff is, or has been invaded or threatened.

The District Judge, taking with the case defendants' oral motion, to dismiss for want of a cause of action for the violation of a federal right, there was a full trial on oral testimony. At the conclusion of plaintiff's case, in the course of which the testimony on both sides and on all issues was fully developed, and again, at the conclusion of their own, the defendants moved for judgment on the pleadings and evidence, (1) for want of any showing by plaintiff of any right or cause of action, and (2) because plaintiff had wholly failed to prove substantial inequality and illegal discrimination.

The District Judge, disagreeing with defendants on their first, agreed with them on their second, ground, and, on fully detailed findings of fact and conclusions of law[1] and a decree[2] based on, and embody-

---

1. "Statement of the Case:
   "Plaintiff, a negro, claiming to be a citizen of the United States, and a resident domiciled in LaGrange, Fayette County, Texas, in this District and Division, and

living within the LaGrange Independent School District, and claiming to be a property owner and taxpayer in said

2. See Note 2 on Page 23.

ing, them, denied plaintiff's prayers for relief.

Here, pointing to phases and aspects of the evidence which he claims clearly establish the discrimination and deprivation of civil rights claimed, plaintiff insists: that in finding that plaintiff's proof failed, the District Judge did so with a gaze too foreshortened, by regard for the over all picture, to see, with an eye single to re-

County and School District, and the father of two children entitled to attend the free public schools of such District, brings this suit for himself and on behalf of others similarly situated, against Defendants, complaining of discrimination against the negro school children or pupils of the District in the matter of school facilities. He claims that there is jurisdiction here under the Fourteenth Amendment of the Constitution of the United States and under the Judicial Code. He prays for Declaratory Judgment and for Permanent Injunction, restraining Defendants from further discrimination.

"Defendants have answered, setting forth that plaintiff does not have sufficient interest in the subject matter of the suit to entitle him, or any of the class he represents, to any relief here. Defendants also say that the Constitution and Statutes of Texas require the establishment, maintenance, and operation of separate schools for negro children and white children; that there is no discrimination in the operation and maintenance of the schools of such District; and that the separate schools operated and maintained for the negro children are substantially equal to those maintained and operated for white children.

"After careful consideration of the evidence offered and in the light of the Law applicable, I find for Defendants. State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 339, 59 S.Ct. 232, 83 L.Ed. 208. Sipuel v. Board of Regents of University of Oklahoma, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247."

"Findings of Fact:

"(a) The Defendant, LaGrange Independent School District, was established in Fayette County, Texas, in this District and Division, by virtue of a Special Act of the Texas Legislature [c. 46], effective April 2, 1921. Such Act was designed to, and does, give to such District, its Trustees, and other officers, certain privileges and powers, and prescribes certain duties. All point to a material and permanent improvement of the public schools of the District. Reference is made to such Act. New territory has from time to time been added to that described in the Act until at the time of this trial a large area of Fayette County was included in such District, with LaGrange the central point.

"(b) One of the first plans or movements was to gradually abolish all the smaller schools of the District, and to establish two large and efficient schools in LaGrange, one for the white pupils and one for the negro pupils, and to daily transport the pupils to and from these two schools by bus. This is being done by many similar Districts in Texas. This plan has been carried out, except that there is still a school for white elementary pupils at Warda and another for white elementary pupils at Ellinger.

"The evidence with respect to such centralization plan shows no discrimination against the negro pupils. Negroes and whites have had and are having the same treatment.

"(c) All of the negro pupils of the LaGrange Independent School District now attend the Randolph School, a combined High School and Elementary School situated in the town of LaGrange. This school is constructed of masonry. It is of the one story type and is fireproof. The original portion of this building was erected in 1934 or 1935, and the additions were completed in 1949. Certain fittings and furnishings of the addition, landscaping and sidewalks remains to be added, but the plant is substantially complete. Except in size, this building compares favorably with and is as good and useful as the buildings used by the white pupils. The difference in size is due to there being more white pupils than negro pupils.

"(d) Each grade at Randolph School has a separate classroom, a teacher, as do the school for the white pupils. They have the same electric lighting, good 'daylighting', adequate and approved seatings, and comparable (although in part different) heating as the school of white pupils. The gymnasium is constructed of the best materials and is modern. In fact, the Randolph School Plant is modern and of the latest design, and as stated is as good as the building used in LaGrange for the white pupils. It is far superior to the buildings and equipment used by the white pupils at Warda and Ellinger. I am not impressed that plaintiff's complaint with respect to the open corridors is meritorious. Whatever difference there may be as to the value of

lieving against them, the precise inequalities urged. He insists, in short, citing Carter v. School Board, 4 Cir., 182 F.2d 531 and Corbin v. County School Board, 4 Cir., 177 F.2d 924; that the over all findings were made with more regard for matching an inferiority here against a superiority there, a superiority here against an inferiority there, in the system as a whole than is allowed by law in cases of this kind; that plaintiff has sued to correct specific inequalities, and is not concerned

the respective sites and buildings therein arises in part by reason of their distance from the center of the town.

"(e) The faculty of the Randolph School is composed of teachers with a higher rating than those in the white schools. It has an average pay scale higher than the white schools, and a student load less than the white schools. The student load is 20.1 child per teacher in the negro school and 22.6 child per teacher in the white schools.

"(f) The curriculum of the Randolph School is that prescribed and required by the State with the same elective studies or subjects submitted to the negro pupils as those submitted to the white pupils. The only negro child shown to have been denied an elective study or subject was the daughter of the Plaintiff in this case who applied for chemistry (not a required subject) on December 5, 1947, too late for such a class to be organized for that year. Whatever delay there was in giving the negro pupils the right to take the elective studies was due to the fact that the negro school is delayed in getting started two to three weeks every year because of the negroes leaving the county and returning late—probably following cotton picking work.

"(g) The white pupils have a better library than the negroes. The libraries of the District first became supported by the public funds of the School District in the School Year 1948-1949 and the Randolph School has been receiving its proportionate share of additions since that time. It is equipped with the usual bookshelves and a teacher with a check out desk. Previous to the school year 1948-9, the respective libraries were maintained by donations from individuals, parent teachers associations, and there were few donations to the negro schools. Also by fines and a fee of $1.00 per pupil which ordinarily were not collected at the negro school.

"(h) The entrance requirements, the teaching system, the examinations, the graduation, and all other similar requirements of the negro schools and white schools are not only substantially equal but are identical.

"(i) Further discussion would unduly prolong these findings. It is sufficient to say that while the two schools (negro and white) are not identical and while the white schools may excel in some respects, they are substantially equal. The disposition of the school authorities is shown by the evidence to be to continue to improve the schools for both races.

"Conclusions of Law:

"1:—The establishment, maintenance, and operation of separate schools for negro pupils and white pupils in the LaGrange Independent School District is not unlawful under the Constitution and other Laws of the State of Texas, nor does it violate the provisions of Amendment XIV of the Constitution of the United States.

"2:—The separate schools maintained for the negro pupils in the LaGrange Independent School District are substantially equal to the schools maintained for white pupils. In fact, the schools maintained at LaGrange in such District for the negro pupils are superior to those maintained at Warda and Ellinger for the white pupils.

"3:—While the matter is not free from doubt, I think that Plaintiff in this case has shown sufficient interest to permit him to prosecute this suit and to represent others similarly situated in the LaGrange Independent School District. I think the Court should be liberal in its holdings in this kind of a suit.

"4:—Plaintiff is not entitled to an Injunction, but Declaratory Judgment will enter in accordance with these Findings and Conclusions."

2. "Final Decree. (Filed March 7, 1950)

"In The District Court Of The United States For The Southern District Of Texas, Houston Division.

Julius Brown, Plaintiff,

vs.                Civil Action No. 4223.

Board of Trustees of the LaGrange Independent School District, LaGrange, Texas, and the LaGrange Independent School District, a Body Corporate, L. D. Boelsche, President of said Board and C. A. Lemmons, Superintendent of the Public School System of the City of LaGrange, Texas, and of the said LaGrange Independent School District, and in their Official Capacity, Defendants.

"Came on before me on the 5th day of December, 1949, The LaGrange Independent School District by and through its duly authorized and constituted offi-

with such matching. He particularly insists that it is no answer to his complaint: that, though the negro students have gotten the short end of the stick in respect of the matters he complains of, the white students have gotten it in others; and that, matching advantages with disadvantages, a fair balance is struck, equality is attained.

The appellees, pointing out that plaintiff is not himself holding any end of the stick, short or long; that, therefore, under fundamental principles enshrined in the decisions dealing with civil rights claims under the Fourteenth Amendment, particularly with claims of the kind made here, he is not being deprived of any right personal to him, and that he has no standing to maintain this suit;[3] insist that the suit should have been dismissed on that ground.

On the tendered issues of inequality and discrimination, they insist that the judgment was right and must be affirmed; that the findings of fact find full support in the record, and may not be set aside as clearly erroneous and the conclusions of law find equally full support in the decided cases.

We agree with appellees' first contention, that plaintiff has not been deprived of any civil right, therefore is without right to maintain this suit, and, it should have been dismissed for want of equity. We will not have to decide, therefore we will not concern ourselves over much with the questions of inequalities so much argued here. Indeed, other than to point out that this is not a suit like Sweat's and Carter's were, for specific relief which could be afforded by ordering admission to a particular school or course which had been illegally denied to him, but is a suit of a very different kind, we will not dwell long on them.

A suit to supervise and control by injunction the general conduct of a political subdivision of the State, this suit has for its purpose, not the mere according of a specific right which has been denied, but the establishment of a sort of general government by injunction over the school district in respect of its schools and school system. Such an injunction requiring detailed and continuous supervision over the conduct of a political subdivision is not congenial to equitable principles and practices and will not usually be granted.[4]

In addition, in the circumstances of this case, where, instead of demanding speci-

---

cials and Julius Brown, appearing for himself and on the behalf of others, similarly situated, as alleged in the said Julius Brown's petition, and upon hearing the pleadings read and the evidence introduced, the Court entered on the 16th day of February, 1950, its Findings of Fact and Conclusions of Law, which said Findings of Fact and Conclusions of Law are referred to for all purposes and by reference are made a part hereof, and incorporated herein for all purposes.

"The plaintiff's plea for an Injunction is denied, and further It is Ordered, Adjudged, Decreed, Determined and Declared that the establishment, maintenance and operation of separate schools for negro pupils and white pupils in the LaGrange Independent School District is not unlawful under the Constitution and other laws of the State of Texas, nor does it violate the provisions of Amendment XIV to the Constitution of the United States.

"It is Further Ordered and Declared that the separate schools maintained for negro pupils in the LaGrange Independ-

ent School District are substantially equal to the schools maintained for white pupils.

"It is Further Ordered and Declared that the plaintiff, Julius Brown, has shown sufficient interest to permit him to prosecute the within action.

"All costs herein are adjudged against the plaintiff.

"Done at Houston, Texas, this 7th day of March, 1950."

3. Collins v. State of Texas, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439; McCabe v. Atchison T. & S. F. Ry., 235 U.S. at page 162, 35 S.Ct. 69, 59 L.Ed. 169, and cases cited; State of Mo. ex rel. Gaines v. Canada, 305 U.S. 337, at page 351, 59 S.Ct. 232, 83 L.Ed. 208; Cook v. Davis, 5 Cir., 178 F.2d 595; Cf. Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 289, 42 S.Ct. 106, 66 L.Ed. 239; Com. of Mass. v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; Dunn v. Fort Bend County, D.C., 17 F.2d 329, 330.

4. 28 Am.Jur., "Injunctions", Sec. 78. Cf. by analogy, 49 Am.Jur., "Specific Performance", Secs. 69, 70, and 71.

fic relief which he believes is denied him because of his color and which may be readily granted, plaintiff seeks to have the court, under his direction, take charge of and equalize an entire school system, we are not prepared to accede to appellant's position that such equalization, if undertaken, either with or without benefit of a court decree, must be brought about on a heads I win, tails you lose basis, that is, the inequalities to be ascertained and removed when they are against him, but to remain as they are, when in his favor.

All of these considerations, however, are completely beside the mark here, for plaintiff has wholly failed to plead or prove any deprivation *of his civil rights* and it is elementary that *he has no standing to sue for the deprivation of the civil rights of others*. What the Supreme Court said in McCabe v. Atchison T. & S. F. Ry. Co., 235 U.S. 151 at pages 161–162 & 164, 35 S.Ct. 69, 71, 59 L.Ed. 169, and quoted with approval in State of Mo. ex rel. Gaines v. Canada, 305 U.S. 337, 351, 59 S.Ct. 232, 83 L.Ed. 208, has precise application here:

"It is the individual who is entitled to the equal protection of the laws, and if he is denied * * * a facility or convenience * * * which, under substantially the same circumstances, is furnished to another traveler, he may properly complain that his constitutional privilege has been invaded.

"There is, however, an insuperable obstacle to the granting of the relief sought by this bill. It was filed, as we have seen, by five persons against five railroad corporations to restrain them from complying with the state statute. * * * It states that there will be 'a multiplicity of suits,' there being at least 'fifty thousand persons of the negro race in the state of Oklahoma' who will be injured and deprived of their civil rights. But we are dealing here with the case of the complainants, and nothing is shown to entitle them to an injunction. It is an elementary principle that, in order to justify the granting of this extraordinary relief, the complainant's need of it, and the absence of an adequate remedy at law, must clearly appear. The complainant cannot succeed because someone else may be hurt. Nor does it make any difference that other persons who may be injured are persons of the same race or occupation. It is the fact, clearly established, of injury to the complainant—not to others—which justifies judicial intervention. * * *

" * * * The desire to obtain a sweeping injunction cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks. * * * "

Cf. Sweatt v. Painter, 339 U.S. 629, 635, 70 S.Ct. 848, 851, where the court said: "It is fundamental that these cases concern rights which are personal and present. * * * In State of Mo. ex rel. Gaines v. Canada, 1938, 305 U.S. 337, 351, 59 S.Ct. 232, 237, 83 L.Ed. 208, the Court, speaking through Chief Justice Hughes, declared that 'petitioner's right was a personal one. It was as an individual that he was entitled to the equal protection of the laws, and the State was bound to furnish him within its borders facilities for legal education substantially equal to those which the state there afforded for persons of the white race, whether or not other Negroes sought the same opportunity.' "

It remains only to determine whether the judgment reversing and dismissing the suit should be for want of jurisdiction, for want of equity, or because of mootness.

If for the first, it would be because it plainly appears from the face of the complaint that plaintiff did not assert any personal right to education of which he was being, or had been, deprived, and it might, with much reason, be said that the petition on its face failed to show sufficiently for federal jurisdiction that a federal question was involved.

If the dismissal should be for mootness, it would be because it appears: (1) that, before the suit was brought, plaintiff and his family, including the daughter, Vivian, whose inability to secure instruction in Chemistry was the principle cause of the suit, had moved to Fort Worth; (2) that Vivian has now finished her education; and (3) that the plaintiff and his family have

26

remained in Fort Worth and intend to remain there until the youngest daughter has finished hers and the need for school facilities in LaGrange is over.

■ A consideration of Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, and of McCabe v. Atchison T. & S. F. Railway Co., supra, convinces us that the dismissal, if not for mootness, should be for want of equity and not for want of federal jurisdiction.

Upon the question of mootness, we are of the opinion that since the suit is not one to redress the deprivation of a right personal to plaintiff and he never had any cause of action, the suit is not any more moot at the last than it was at the first, and it ought, therefore, to be dismissed not as having become moot, but as wanting in equitable right.

On the whole case, therefore, it is our view that the judgment should be reversed and the cause remanded with directions to dismiss the complaint for want of equity in the plaintiff to maintain it.

Reversed and remanded with directions to dismiss.