**TEXAS MUNICIPAL RETIREMENT SYSTEM, Appellant,**

v.

**Ruth ROARK, Appellee.**

**No. 11381.**

Court of Civil Appeals of Texas.

Austin.

April 6, 1966.

Rehearing Denied April 27, 1966.

Gaynor Kendall, Austin, for appellant.

Clark, Thomas, Harris, Denius & Winters, Conrad Werkenthin, Mary Joe Carroll, Austin, for appellee.

PHILLIPS, Justice.

This suit was brought by Mrs. Ruth Roark, the appellee here, against the Texas Municipal Retirement System, appellant, on the theory that she was entitled to a retirement annuity from the Retirement System under the provisions of a statute enacted in 1963 (Chapter 223, Acts Regular Session, 58th Legislature) as an amendment to the Act governing the system (Article 6243h, Vernon's Civil Statutes of Texas.) The amendment of 1963 is set out in Sec. VI, subsection 8, of Article 6243h, Vernon's Ann.Civ.St.

The case was tried before the court sitting without a jury and the pertinent facts were stipulated.

The court entered judgment ordering appellant to pay appellee a monthly retirement benefit of $100.67 per month beginning October 31, 1963 and continuing for her life, and upon her death, to pay her nephew $50.34 per month for his life, and that such monthly amounts from October 31, 1963 to June 30, 1965 (aggregating $2,114.07) should be paid to plaintiff in a lump sum, with interest thereon from date of judgment at 6% per annum.

The appellant Texas Municipal Retirement System has perfected its appeal from this judgment.

We reverse the judgment of the trial court and render judgment that appellee take nothing in this suit.

Appellant is before this Court on four points of error,[1] however inasmuch as we sustain its first point we need not discuss the other three.

Appellant's first point of error is that the statute under which appellee claims benefits (Chapter 223, Acts 58th Legislature) is invalid, because it attempts to require payment of a pension to plaintiff under a retirement plan or system to which the affected cities of Marfa and Pasadena have not consented, thus violating the provisions of Sec. 51–f, Art. III, of the Texas Constitution, Vernon's Ann.St. that participation by cities in the statewide retirement plan "shall be voluntary."

We sustain this point.

For practical purposes, the facts of the instant case are undisputed. These facts concerning Mrs. Roark's employment by the cities of Marfa and Pasadena, as well as her dealings with the System, are detailed in a written stipulation introduced by plaintiff. The pertinent facts are:

On July 1, 1948, the City of Marfa, Texas, elected to become and became a participat-

---

1. Point II. Chapter 223 assumes to compel payment of a pension to plaintiff solely on the basis of services rendered by her as a former employee of two Texas cities. The act was passed after all such services had been wholly performed by plaintiff, after she had been fully paid for such services on the basis of then-existing law, and after her employment had terminated. That portion of the act is void because it violates Sections 44 and 53 of Article III of the Constitution of Texas, which prohibit additional compensation to be paid or authorized to be paid to municipal employees after service has been rendered.
Point III. Paragraphs (2) and (3) of Section 1, Chapter 223 violate Section 56 of Article III because it is a special law regulating the affairs of the Cities of Marfa and Pasadena.
Point IV. If (as appellee contends) appellant is not entitled to raise the questions of unconstitutionality of the act, then there is a fundamental defect of parties defendant and the judgment below must be reversed for that reason.

ing municipality in the Texas Municipal Retirement System.

The plaintiff-appellee, Ruth Roark, was an employee of the City of Marfa on July 1, 1948, and had been an employee of that municipality for a period of 276 months prior to that date. As an employee of a participating department of the City of Marfa on the date the City became a participating municipality in the System, Mrs. Roark became a member of the System for the first time.

As a beginning member with prior service with Marfa, Mrs. Roark claimed and was issued a prior certificate covering the 276 months for which she had worked for Marfa prior to the date of its participation in the System at an average prior service compensation of $250.00 per month. This certificate not only recites that it "is issued in accordance with and subject to the provisions of chapter 24, Acts of the 51st Legislature," but further expressly states the statutory condition upon which it was issued as follows:

"When membership ceases, this prior service certificate shall become void. Should one again become a member after his membership has terminated, such person will not be entitled to credit for prior service."

After the City of Marfa became a participating municipality of the System, Mrs. Roark remained in its employment for a period of ten months. During that ten-month period she made current-service deposits to the System in the aggregate amount of $132.00.

On April 30, 1949, Mrs. Roark was discharged from her employment with the City of Marfa.

On October 1, 1949, Mrs. Roark entered the employment of the City of Pasadena, Texas, which was not a participating municipality of the Texas Municipal Retirement System.

Both prior to and during the period of her employment with the City of Pasadena, Mrs. Roark was advised by officials of the System in regard to her status and rights under the statute, and what was required to keep them effective. The substance of the advice given her is set out in a letter opinion from counsel for the System to the Director under date of December 8, 1959. That letter pointed out to her that her 23 years of creditable service at Marfa was not sufficient to qualify her for service retirement at less than age sixty (that 28 years of creditable service was necessary). Further, since she was 53 years of age when she was discharged at Marfa, and since more than sixty months would elapse before she would reach age sixty (required for service retirement with at least fifteen years of creditable service) she was told that she would lose her membership in the System and all claim for credit for her antecedent service, unless she returned to work for some participating municipality within sixty months from the date of her discharge at Marfa. The letter pointed out that the City of Pasadena was not a participating municipality of the System, and that her employment there would not preserve her membership in the System. On this point, the letter concludes:

"Only by returning to service of some participating municipality within the sixty months period can she preserve her membership in the Texas Municipal Retirement System for a sufficient period to complete the service requirements and membership requirements of the act, so as to entitle her to a service retirement benefit at age sixty."

Despite the information given her concerning consequences of her absence from employment in a participating municipality, Mrs. Roark remained in the employment of the City of Pasadena. On or about June 1, 1954, Mrs. Roark was advised by the System officials that her membership in the System had terminated by reason of her continuous absence from employment by a participating municipality for more than sixty months;

and she was advised that she had the right to withdraw the $132.00 deposited by her with the System while she was working for the City of Marfa, together with interest accumulated thereon. She thereafter applied for refund of such deposits and interest, and was paid ($143.15) such sum by the System.

On August 1, 1956, the City of Pasadena, Texas elected to become a participating municipality of the Texas Municipal Retirement System. Mrs. Roark, as an employee of the City of Pasadena on the effective date of its becoming a participating municipality again became a member of the System, and she filed a claim against the City of Pasadena for prior service credit with that municipality for the 82 months she had worked there. She was issued a certificate covering those 82 months of prior service with Pasadena at an average prior service compensation of $300.00 per month, and that instrument likewise contained the language quoted above as conditions of its remaining effective.

From August 1, 1956, Mrs. Roark continued in the employment of the City of Pasadena for a period of 39 months. She was discharged from her employment with the City of Pasadena on October 31, 1959. During the period from August 1, 1956 until the termination of her employment of the City of Pasadena on October 31, 1959, the City of Pasadena being a participating municipality during all such time, Mrs. Roark made monthly deposits with the Texas Municipal Retirement System, such deposits being in the aggregate amount of $387.85. With interest allowed by the System on the monthly deposits, the amount standing to the credit of her individual account at the end of her employment with the City of Pasadena amounted to $392.92, and with interest allowed through the 60 months thereafter, the amount standing to her credit on the books of the System at the present date is $438.36. She has not withdrawn any of the contributions made by her during her employment by Pasadena.

Mrs. Roark has been employed by no cities which are participating municipalities of the Texas Municipal Retirement System except for her employment by the City of Marfa and her employment by the City of Pasadena, as above related.

The Act itself is quite complicated and for the purposes of this opinion it is not necessary to state these requirements in detail. The benefits are calculated on an actuarial basis. If the member remains in the employment of a participating municipality until he becomes entitled to retire, his own accumulated deposits (including interest) plus an equal amount of money contributed by the participating city (or cities) by which he was employed are utilized by the System to pay the retiring employee a "current service annuity" consisting of a monthly benefit each month so long as he lives, with sixty monthly payments guaranteed. The amount of this benefit is determined as follows: using approved life-expectancy (mortality) tables and allowing interest at the rate prescribed by the statute, the System computes the amount of the benefit it can pay the retiring employee each month during his life (but with at least sixty monthly payments guaranteed), in consideration of its accepting in return (essentially as a single premium paid to the System at the retirement date) the sum of (a) the employee's own accumulated deposits (including interest previously earned thereon), plus (b) an equal matching amount out of the funds belonging to the participating city (or cities) by which he was employed during his period of "current service." The amount so calculated constitutes the standard benefit payable on account of the "current service" of an employee who earns retirement under the statutory formula; or, he has the privilege of selecting one of several optional payment plans each of which is the actuarial equivalent of (i. e., having the same present actuarial value as) the standard service retirement benefit. (Subsecs. 2 and 3, Sec. VII, Art. 6243h).

From the above, it is apparent that current service annuities are paid for: one

half by the employee-member, and one half by the participating city (or cities) by which he was employed; further, that the amount of the benefit is in direct proportion to length of creditable current service and the amount of monthly deposits made by the member to the System during his employment. Moreover, as has been shown, the Act (except as it may have been modified by the 1963 amendment under which plaintiff claims benefits) provides that where an individual's membership in the System has once terminated (by his withdrawal from employment in a participating municipality and refund of his deposits), if he again thereafter re-enters the System as an employee of a participating municipality, he enters as a new member: his creditable "current service" runs (and he makes deposits with the System) only from the date of the new membership based upon the new employment.

In addition, upon the terms and conditions prescribed in the statute, "each person who is an employee of a participating department of a particular municipality on the effective date of participation of such department and who becomes a member on such effective date shall be entitled to receive credit for 'prior service' ", Subsec. 1, Sec. VI, Art. 6243h, i. e., for service as an employee of such department prior to its participation in the System, Subsec. 22(a), Sec. II, Art. 6243h.

Here again, the details of calculating this prior service are not pertinent here. It is suffice to state that the entire cost of the prior service is one charged by the System against the participating municipality which issued the prior service certificate which lapses because of withdrawal of an employee from employment of a participating municipality, or because of his death, reduces the amount which the City otherwise would pay the System. Conversely, should the lapsed prior service certificate be reactivated, it would increase the amount which the participating municipality must pay to the System.

From the above recital of Mrs. Roark's employment history, it is apparent that she did not, during the period of her employment with the cities of Marfa and Pasadena, qualify for a retirement benefit with Texas Municipal Retirement System under the then-existing law. Specifically, she did not qualify for retirement by reason of her service with Marfa, because she absented herself from the employment of a participating municipality for more than sixty consecutive months after her discharge at Marfa, and thereby lost her right to claim credit for prior service with that City. When she re-entered the System upon the subsequent participation of the City of Pasadena, she did not remain in its service for a sufficient length of time to qualify for a retirement benefit by reason of that service alone.

So her claim for benefits is based upon an act passed in 1963, after her employment with any participating city had long since terminated, to-wit, Chapter 223, Acts of the Regular Session of the 58th Legislature. This statute purported to add a new subsection 8 to Section VI of the Act relating to Texas Municipal Retirement System (Art. 6243h, Vernon's Civ.Stats.). The first paragraph of the new subsection added by the amendment provides that:

"8. (1) Notwithstanding any provision of this Section VI or any other Section of this Article 6243h to the contrary, a person employed by two (2) or more participating municipalities shall be able to cumulate credits for the total 'creditable service' rendered by such employee to all such municipalities if the following conditions are met:

a. Such employee must have accumulated at least twenty-two (22) years of 'creditable service,' as that term is defined herein, with the participating municipality for which such employee was employed when he first became a member of the Texas Municipal Retirement System, which accumulation shall have been earned through continuous employment

with such municipality without break in service.

b. Such employee must have been employed by each such participating municipality on the effective date of participation of each such municipality.

c. As of the date of eligibility for retirement, as herein defined, such employee shall have been employed by a participating municipality.

d. There shall have been an interruption of continuous, cumulative employment by such employee with such municipalities wherein such cumulative credit for 'creditable service' was earned of less than nine (9) months.

e. The total credits for 'creditable service' with all municipalities wherein such credits were earned shall equal or exceed twenty-eight (28) years as of the date of retirement.

f. Such employee shall have earned a credit for 'creditable service' from each such participating municipality of at least five (5) years.

If the foregoing conditions are met, the employee shall be able to cumulate his credits for 'creditable service' rendered to two (2) or more municipalities in determining eligibility for retirement benefits, payments of benefits to such employee, and methods of financing the payment of such benefits. The Board shall adopt rules and regulations which shall divide equitably the cost attributable to the credits and benefits herein provided for between or among the municipalities wherein such credits were earned."

It will be noted that the above quoted paragraph (1) delineates a most unusual set of circumstances to define eligibility for a pension under the System. But even these unusual provisions would not entitle Mrs. Roark to a pension under the System because those conditions are spelled out in terms of prospective operation of the stat-ute, and would affect only persons accumulating all or part of the credits subsequent to the effective date of the statute. Mrs. Roark, on the contrary, has not been employed by any Texas city, and specifically, has not been employed by any member city of the System at any time since the Act in question was passed. In consequence her claim is based on paragraphs (2) and (3) of the Act in question, which expressly purport to have retroactive effect, so as to grant a pension to any person who would have qualified under the classifications delineated in paragraph (1), had that section been in effect from and after January 1, 1959. These provisions are as follows:

"(2) The provisions of this subsection 8 of Section VI shall be applied retroactively in favor of all persons eligible for benefits under the provisions of said Article 6243h, as herein amended, from and after January 1, 1959. Persons who would have become eligible for benefits under the provisions of this Act prior to the enactment hereof and subsequent to January 1, 1959, shall make application therefor within 180 days from the date hereof and not later.

(3) The benefits inuring to employees under this subsection shall apply whether or not such employee has withdrawn his accumulated deposits or such deposits have been automatically withdrawn by lapse of time; provided that the Board shall adopt rules and regulations providing for the return of such withdrawals to the Fund or suitable adjustment of benefits to take into account such withdrawals."

It is the appellant's position that the portions of the Act under which Mrs. Roark claims benefits, specifically paragraphs (2) and (3) above quoted, are unconstitutional inasmuch as they establish an additional pension system to the one already established without the consent of the two cities liable for its payment.

In 1944 the Legislature, pursuant to authority granted it by Section 51–f of Article

III of the Texas Constitution, established the Texas Municipal Retirement System to operate statewide, embracing cities and towns which voluntarily elect to participate therein. This Section of the Constitution provides the following:

"Sec. 51–f. The Legislature of this State shall have the authority to provide for a system of retirement and disability pensions for appointive officers and employees of cities and towns to operate Statewide or by districts under such a plan and program as the Legislature shall direct and shall provide that participation therein by cities and towns shall be voluntary; provided that the Legislature shall never make an appropriation to pay any of the cost of any system authorized by this Section."

The general question presented by the statute, then, is what is meant by the provision in Section 51–f of Article III that "participation * * * by cities and towns [in the retirement plan or system thereby authorized] shall be voluntary"? More specifically, once a city has agreed to participate in and pay the costs of a retirement system covering its present and future employees under stated terms and conditions, can the Legislature change the System so as to establish pensions for former employees who failed to qualify for retirement under the original plan, and impose the costs of the new coverage upon the municipalities particularly affected thereby, without any further consent on their part?

Appellant concedes that the alteration attempted to be made in the System by Chapter 223 is quite restricted. Under paragraphs (2) and (3) of the new subsection 8, it imposed only the cost of providing a pension for one former employee of two participating municipalities, at a total cost of something above $17,000, of which the two cities would be required to pay approximately 97%. However, appellant contends that if the Legislature can establish an additional plan or system for one former employee not previously eligible, without the consent of the affected municipalities, it can alter the System in more ambitious and far-reaching ways without their agreement or consent. That such a construction enters a world without guidelines, leaving determinations of degree to be made by the Legislature and reviewed by the courts, where it was the obvious purpose of the framers of the amendment to give the municipality the power to decide on the basis of a presently defined statutory framework.

The Supreme Court considered a similar problem in the case of City of Fort Worth v. Howerton, 149 Tex. 614, 236 S.W.2d 615 (1951). There the City had established a locally-administered pension system pursuant to Section 51–e of Article III of the Constitution. Subsequently, in 1949, the Legislature enacted Article 6243i, H.B. 391, Vernon's Civil Statutes, which assumed to establish a Police Officers' Pension Fund covering policemen in the City of Fort Worth, and provided that a designated portion of the assets of the locally-administered system should be transferred to the new police system. The Court held that as Fort Worth was authorized to establish the locally-administered system under Section 51–e, and had done so, thereby establishing certain rights and duties,

"* * * the Legislature is not authorized to change the plan, as is undertaken by Article 6243i, without the consent of the City of Fort Worth, and that that part of the law which undertakes to do so is inoperative as against the City of Fort Worth."

In Howerton, the limitation forbidding the Legislature from changing the plan without the consent of the City was implied. In the case at bar, the limitation against imposing a plan upon cities, so as to make them participate involuntarily in a plan to which they have not consented, is express. And what the Court said in

that case is applicable here with equal or greater force:

"It is the general policy of the law, where rights have been fixed under a constitutional provision, that the Legislature is without power to destroy or impair such rights. It is also the general rule that the Legislature does not have power to enact any law contrary to a provision of the Constitution, and if any law, or part thereof, undertakes to nullify the protection furnished by the Constitution, such law, or part thereof, that conflicts with the Constitution is void." (Citing cases.)

For the above reasons, the Act under which Mrs. Roark claims benefits is inoperative as to the two towns involved because it violates Section 51–f, Article III.

The cases City of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 997 (1937) and Woods v. Reilly, 147 Tex. 586, 218 S.W.2d 437 (1949), which plaintiff-appellee cited in the District Court, are distinguishable. Those cases stand for the proposition that a person who is included within a pension system established by statute does not, at least so far as future payments are concerned, have a vested contractual right to receive a pension as authorized by existing laws. His rights are "predicated upon the anticipated continuance of existing laws" and consequently are subject to the power of the Legislature to change, without violation of any contract rights. That is, the member has no contract rights that the existing laws be continued, and change in the laws relating to the pension system consequently do not violate his contractual rights. But those cases do not hold that the Legislature has power to amend all existing retirement systems covering city employees, without the consent of the affected municipality, and despite constitutional provisions giving

the city the power of choice. As shown, the Howerton case illustrates the principle that where the city is by the Constitution given the power to establish a pension system, and it has made that election, the Legislature may not create a different system and substitute it, without the city's consent. By the same force, the constitutional provision here invoked gives the city the power to choose whether or not to participate in a statewide system which the Constitution authorizes to be established. It cannot be deprived of that power to choose by subsequent legislation which adds on to the existing system another (or additional) plan or system covering employees (or former employees) who do not qualify for pensions under the System in which the city agreed to participate.

■ We hold that the acquiescence of the city to what, for all practical purposes, amounts to a new levy upon its monetary resources set aside for retirement benefits, must be obtained either through an ordinance or some other appropriate method that affirmatively shows that the city has given its approval thereto.

■ By counterpoint, appellee has urged that the appellant System is not entitled to question the validity of the Act under which Mrs. Roark claims benefits, on the premise that the constitutional objections relate to the cities of Marfa and Pasadena and, since appellant did not make them parties, the System cannot refuse to pay the pension merely because the Act violates the provisions discussed above. Appellee has cited cases [2] which state the general rule that where a person assuming to question the validity of a statute is unable to show that the Act directly affects his rights or obligations, he will not be heard to say that the Act may affect others in an unconstitutional way.

We do not agree with appellee's argument in this regard. The obligations and

---

2. Texas Company v. Honaker, Tex.Civ. App., 1926, 282 S.W. 879, er. ref., per opinion 115 Tex. 509, 283 S.W. 1071 and

Collins v. State of Texas, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439 (1911).

rights of the System are directly affected by the statute, because if the statute is unconstitutional as applied to the above-mentioned two cities, the System will not be protected in paying out the monies which the statute directs it to pay. The appellant System is therefore one whose rights are affected by the operation of the statute. See City of Amarillo v. Tutor, Tex.Com. App., 267 S.W. 697.

We reverse the judgment of the trial court and render judgment that appellee take nothing by her suit, however, this holding is without prejudice to any rights Mrs. Roark may have if the cities involved give their consent.

Reversed and rendered.