## S. F. LARSON V. THE STATE.

No. 9231. Delivered October 28, 1925.

Rehearing denied June 9, 1926.

1.—Violating Medical Practice Act—Recognizance—Insufficient—Appeal Dismissed.

The recognizance in this case is as follows: "J. E. Rose, A. A. Gunter, W. D. McFadden entered into reconsonce with dfet. S. F. Larson in the sum of two hundred ($200.00) dollars that deft will perfect his appeal in accordance with notice of same." There is no excuse for a record being sent here in this condition. Art. 919, Vernon's C. C. P., plainly prescribes the form for a recognizance on appeal in misdemeanor cases. Because of the defective recognizance, the appeal is dismissed.

2.—Same—Record Corrected—Proper Recognizance Filed—Appeal Reinstated.

The record having been corrected by the filing of a legal recognizance, the appeal is reinstated and will be considered on its merits.

3.—Same—Evidence—Held Sufficient.

Where, upon a trial for a violation of the medical practice act of the state, appellant testified that he was an electrical therapeutic, and that as such he treated people afflicted with bodily ills, and charged them for

his services. These acts would constitute him a practitioner of medicine under our laws, as construed by the opinions of the court. See Vernon's P. C., Art. 255; Collins v. State, 57 Tex. Crim. Rep. 2, and numerous other cases cited.

### 4.—Same—Continued.

As such practitioner he is required by the terms of Art. 750, Vernon's P. C., to register with the district clerk a certificate issued to him by the State Board of Medical Examiners.

### 5.—Same—Constitutionality of Medical Practice Act—Held Valid.

Article 753, Vernon's P. C., defining what is meant by a bona fide, reputable medical school, and stating that same is one "whose entrance, requirements and courses of instructions are as high as those adopted by the better classes of medical schools of the United States, whose course of instructions shall embrace not less than four terms of five months each," has many times been held valid by this court. See authorities cited under Art. 750, Vernon's P. C. Distinguishing Smith v. Texas, 233 U. S. 630.

### 6.—Same—Evidence—Properly Rejected.

Where, on a trial for a violation of the medical practice act, there was no error in rejecting testimony offered by appellant that persons were benefited by his treatment. Such testimony could in no wise militate against the question of appellant's guilt, of practicing medicine without filing a certificate issued by the State Board of Medical Examiners of this state.

### 7.—Same—Bill of Exception—Practice in Trial Court.

It is not recognized as proper practice in this state for the appellant to incorporate each ground of his motion for a new trial into a separate bill of exception, where the matters presented in such bills merely complain of the rulings of the trial court and the incorrectness of his judgment.

ON REHEARING.

### 8.—Same—Constitutionality of Statute—Held Valid.

On rehearing appellant insists that our statute, which requires an applicant to be a graduate, that is, to hold a diploma from a reputable medical school, before being eligible for examination for a certificate to practice medicine in this state, is in conflict with Art. 14, Sec. 1, of the Constitution of the United States, and Art. 1, Sec. 3, of the Constitution of this state.

### 9.—Same—Continued.

We cannot agree with his contention. The provisions contained in our act have been sustained in numerous decisions of this court, by the courts of other states, as well as by analogy in many decisions of the Supreme Court of the United States. Cases directly in point are: Gothard v. People, 32 Colo. 11; In re Thompson, 36 Washington 377; Ex Parte Gerino, 143 Cal. 412, and other cases cited in opinion on rehearing.

Appeal from the County Court of Jefferson County at Law. Tried below the Hon. C. N. Ellis, Judge.

Appeal from a conviction for violating the medical practice act, penalty a fine of $50 and ten days in jail.

The opinion states the case.

*Jas. E. Rose, B. C. Johnson* and *A. A. Gunter* of Port Arthur, for appellant.

*Chen & Black; Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

Writ of error to Supreme Court of the United States granted October 4, 1925.

Writ of error dismissed by the Supreme Court of the United States, January 3, 1927.

LATTIMORE, JUDGE.—From conviction in County Court of Jefferson County at Law of violating the medical practice act, with punishment fixed at a fine of $50 and ten days in jail, this appeal is taken.

The only semblance of a recognizance appearing in the transcript is as follows: "J. E. Rose, A. A. Gunter, W. D. McFadden entered into reconsonce with dfet. S. F. Larsen, in the sum of Two Hundred ($200.00) dollars, that deft. will perfect his appeal in accordance with notice of same." There is no excuse for a record being sent here in this condition. Art. 919, Vernon's C. C. P., plainly prescribes the form for a recognizance on appeal in misdemeanor cases. To omit to incorporate the recognizance in the transcript on appeal requires a dismissal of the appeal. Such dismissals necessitate cost and delay. The people who select the officials also pay the costs. They should see to it that men are put in public positions who will endeavor to follow the plain forms which any man who can read, can find.

Because of the defective recognizance, the appeal is dismissed.

*Dismissed.*

ON MOTION TO REINSTATE APPEAL.

LATTIMORE, JUDGE.—At a former term of this court this appeal was dismissed because of a defective recognizance. Appellant asks for a rehearing and accompanies his request by a certified copy of legal recognizance entered into by him appealing this case. The appeal will be reinstated and the case discussed on its merits.

Appellant testified in his own behalf on the trial that he did not

practice medicine nor hold himself out as a practitioner thereof, but said he was an electrical therapeutic, and admitted that as such he treated people afflicted with bodily ills and charged them for his services in such regard.  He said he was a graduate of the Pennsylvania College of Optics and of the Des Moines School of Orificial Surgery, but admitted that he had never been examined by the State Board of Medical Examiners of Texas, and further that he had never filed with the district clerk of Jefferson County any license or certificate issued by said board.

That appellant was a practitioner of medicine under our laws as construed by the opinions of this court, seems clear.  Art. 255, Vernon's P. C.; Collins v. State, 57 Tex. Crim. Rep. 2; Collins v. State, 223 U. S. 288; Milling v. State, 150 S. W. 434; Lewis v. State, 155 S. W. 523; Singh v. State, 146 S. W. 891; Hicks v. State, 88 Tex. Crim. Rep. 438; Black v. State, 86 Tex. Crim. Rep. 254.

As such practitioner he is required by the terms of Art. 750, Vernon's P. C., to register with the district clerk a certificate issued to him by the State Board of Medical Examiners.  This he has not done and was therefore penally liable for such failure, unless we respond to his contention that the law under which he was convicted is unconstitutional.  This we cannot do.  If we understand appellant's contention his attack is based on the proposition that Art. 753, Vernon's P. C., defining what is meant by a bona fide reputable medical school, and stating that same is one "Whose entrance requirements and courses of instruction are as high as those adopted by the better class of medical schools of the United States, whose courses of instruction shall embrace not less than four terms of five months each," is indefinite, uncertain and also arbitrary.  We are not able to say that this sets up an arbitrary discrimination between schools, or that it is a character of classification which the legislature cannot make. We see nothing in Smith v. Texas, 233 U. S. 630, contrary to this view.  The right of free contract was there involved and the Supreme Court of the United States said same could not be abridged by an Act of the legislature forbidding the employment of one as a passenger conductor until he had served as a freight conductor or brakeman for two years.  The distinction between the statute here involved and the one thus held unconstitutional by our Supreme Court, seems obvious.

The constitutionality of the Act under consideration has been attacked in many cases and as often sustained.  Authorities cited under Art. 750, Vernon's P. C.  We see no reason for writing further on the subject.

There are a number of bills of exception, many of which complain of the rejection of proof that appellant benefited persons by his treatment. Such evidence could in nowise militate against the question of guilt herein. Nor would proof of the fact that he had filed a diploma with the district clerk affect the question of his guilt when charged with failing to file a certificate issued by the State Board of Medical Examiners of this state.

Bill of exceptions No. 5 presents no error as qualified by the court in a statement to the effect that appellant was offering the same character of testimony regarding his beneficial treatment of patients, and that the court indicated that he would hold such further proof unnecessary and inadmissible.

Bills of exception No. 6 to No. 21, inclusive, present the action of appellant in selecting each ground of the motion for new trial and incorporating same into a bill of exceptions which he has filed. We know of no such rule of practice. The motion for new trial merely complained of the rulings of the court and the incorrectness of his judgment, and evidences no matters of newly discovered evidence, misconduct of the jury or other matters not pertaining to the regular trial of the case. None of the bills manifest any error. There was a special charge, but on same there is no notation of whether it was refused or given, or when same was presented, nor is there a bill of exceptions regarding it.

The record being devoid of any showing of error, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant contends that his position in claiming the law under which he was convicted to be unconstitutional was misunderstood by this court and not discussed.

Article 4501 (R. C. S., 1925) provides:

"All applicants for license to practice medicine in this state, not otherwise licensed under the provisions of law, must successfully pass an examination before the Board of Medical Examiners established by this law. Applicants, to be eligible for examination, must present satisfactory evidence to the board that they are more than twenty-one years of age, of good moral character, and graduates of bona fide, reputable medical schools. Such school shall be considered reputable within the meaning of this law whose entrance requirements and course of instruction are as high as those adopted by the better class of medical schools of the United States, whose course of instruction shall embrace not less than four terms of eight months each."

The gravamen of appellant's complaint is against that provision which requires an applicant to be a graduate, that is, hold a diploma, foom a reputable medical school before being eligible for examination, it being contended that this is discriminatory against one who might be qualified to stand any examination required, although not holding a diploma, and is, therefore, in conflict with Art. 14, Sec. 1, of the Constitution of the United States, and Art. 1, Sec. 3, of the Constitution of this State.

The Supreme Court of the United States in Dent v. State of West Virginia, 129 U. S. 114, 32 L. Ed. 623, clearly recognizes the right of the state to fix an educational qualification on one seeking to practice medicine. We quote from that opinion as follows:

"The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud. As one means to this end it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely, their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. *The nature and extent of the qualification required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty.*" (Italics are ours.)  Upon the same point see Collins v. Texas, 223 U. S. 288, 56 L. Ed. 440.  In Johnson v. State, 267 S. W. 1057, the state sought an injunction against Johnson to restrain him from illegally practicing medicine.  Judge Jones, writing the opinion for the Court of Civil Appeals of the Fifth Supreme Judicial District, said:

"In the interest of the public health and the general welfare of the people, the legislature is authorized to prescribe such regulations to be conformed to by persons seeking to enter the practice of medicine as in its judgment will secure, or tend to secure, the people against the consequences of ignorance and incapacity, as well as of deception and fraud, and this without regard to any special system of practice or any established school of medicine. It is a matter of common knowledge that few, if any, professions

require more careful preparation by one who seeks to enter it than does that of medicine. It deals with all those subtle and mysterious influences upon which health and life depend. Regardless of the school of medicine or system of practice followed by the practitioner of medicine in any of these systems, the general welfare of the people demands that such practitioner be able to detect, readily, the presence of disease, and to treat it in some manner recognized as appropriate for its removal. In order that assurance may be had that the one who treats diseases has this requisite qualification, the state has the undoubted right to prescribe a general preparation to be made by one entering such profession, and also to prescribe that he shall have a knowledge of what the legislature may deem the necessary scientific branches of such profession. The conditions prescribed as necessary prerequisites in the matter of education and training for entry into the medical professions by Arts. 5739 and 5741 represent that which the legislature in its wisdom deemed necessary in the interest of the public health and the public welfare as the state's guaranty of fitness for this high calling. These conditions apply to all persons alike; they do not prescribe any method to be employed in healing disease, or any system of practice to be adopted by the practitioner. If he possesses the qualifications prescribed by the statutes and is awarded a certificate to practice medicine, he is just as free to adopt the system of the chiropractor as he is to adopt the system of the regular physician. The fact that it requires a broader education than is given by the chiropractic college to meet these conditions cannot be urged as a discrimination against such schools of medicine."

While the cases heretofore referred to are not on the identical question here presented by appellant they are persuasive against the contention urged. However, the point raised is by no means a new one and has been passed upon by courts of other states and decided adversely to appellant. We find in Minnesota v. Vandersluis, 6 L. R. A. 119, this language:

"What the particular objections of a constitutional character the appellant makes to this section are, it is somewhat difficult to tell from his brief. We infer, however, that he claims the section to be objectionable because, no matter how well qualified by learning and skill or experience one may be, he has no absolute right to be examined by the board unless he has a diploma from a dental college in good standing, such good standing to be determined by the board; and this he claims to be discrimination between the rich and poor, because one may be pecuniarily able, and another not able, to attend a dental college. The mere fact

of discrimination in such a law is no objection to it. Requiring a certain degree of learning and skill as a condition of being allowed to practice is discrimination between those who have and those who have not that degree of learning and skill— between those who are able and those who are not able to acquire it. If there were discrimination between persons or classes upon any matter not pertinent to the legitimate purpose of the law, to-wit, to secure fitness and competency in those who shall be permitted to practice, it would be objectionable. As, for instance, if it were as to place of birth, color, or religious belief. The requirement of a diploma from some college or learned society, in order to practice medicine, has been inserted in the laws of many states, and questioned in but few. In Massachusetts a law required the practitioner to have been licensed by the Medical Society, or been graduated a doctor in medicine at Harvard University. This was held constitutional in Hewitt v. Charier, 16 Pick. 356. The statute of Nevada (1875) required a medical education and a diploma from some regularly chartered medical school. This was held constitutional in Ex Parte Spinney, 10 Nev. 324."

Upholding the constitutionality of a provision in the law very similar to the one here attacked, the California Supreme Court in Ex Parte Whitley, 144 Cal. 167, said:

"The law, no doubt, is discriminatory, but not in any constitutional sense. It does not discriminate between classes. The discrimination goes to the degree of learning and skill which all applicants for examination must possess. It discriminates between those who have the necessary degree of learning and skill, and those who have not; between those who are able and those who are unable to acquire it. It is not an unreasonable or capricious discrimination applying to classes as such, or members of a class, but is based solely upon professional qualifications. It is a discrimination which, in the interest of public welfare, it is the duty of the legislature to make, and the necessity for which, and its nature and extent—whether an examination and right to practice shall depend on the possession by the applicant of a diploma of a dental college only, or be extended to others, and how far—depend primarily upon the judgment of the legislature, which, when reasonably exercised, the courts cannot control."

The identical question is also decided against appellant in Gothard v. The People, 32 Colo. 11; In re Thompson, 36 Washington 377, and Ex Parte Gerino, 143 Cal. 412. See also State Ex. Rel. Coffey v. Chittenden, 112 Wis. 569; State Ex. Rel. Kellogg v. Currens et al. 111, 431.

We think appellant's contention that the law in question is discriminatory and unconstitutional because requiring a diploma before he is eligible for examination is unsound and not supported by the authorities.

The motion for rehearing is overruled.                    *Overruled.*