J. A. HUNT v. STATE

No. 27,003. June 2, 1954
Appellant's Motion for Rehearing Denied
(Without Written Opinion) October 13, 1954

M. L. *Miller, John C. Grant,* and *William Cantrell, Jr.,* Dallas, for appellant.

*Stuart B. Lumpkins,* County Attorney, Waxahachie, and *Wesley Dice,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Appellant was convicted of the offense of unlawfully engaging in the practice of medicine for pay in that he did treat and offer to treat Fred Svoboda for diseases or disorders of the human body without first having registered in the office of the district clerk of Ellis County, Texas, his license from an authorized Board of Medical Examiners of the State of Texas, etc. On the trial he was convicted by the jury and assessed a fine of $250.00 and confinement in the county jail for a period of 15 days.

The facts show that one, Fred Svoboda, who lived in the town of Athens, Texas, and worked at a brick plant, had previously resided in Palmer, Texas. It appears from his testimony that he had some kind of a pain in his arm about February 27, 1953, and went to the town of Waxahachie and made inquiry relative to the residence of J. A. Hunt. He found the appellant at his home on that date and told him that he had some trouble with his arm, that he could not straighten it out, and that he had pain in the muscles and leaders thereof. Whereupon appellant took him into a room where there was a machine which looked something like a radio with dials thereon. Appellant seated the witness in a chair and handed him a wire of some kind to hold in his hand. This wire was connected with this radio-like machine. There was also a wire connected with the chair in which he was seated. Appellant then turned some of the dials of the machine and left the witness attached thereto

for about fifteen minutes. After having written something out on a piece of paper, the appellant put the patient under another machine where he had a like treatment. He stayed there for about 45 or 50 minutes. There was a difference between the first and second machines to which he was connected. Eventually the witness was told that he had arthritis and trouble in his blood vessels. He then asked appellant if he could treat him, and he replied, "Yes," that he would try treating his arm and might straighten him up; that he would treat him with these machines. The witness was then allowed to go and was told to return on the following day. The charge for this treatment was two dollars, which the witness did not have with him at the time, but did pay appellant on the following day. He returned the next day and received the same treatmnet that he had on the previous day and paid appellant two dollars therefor. He returned at further times for treatment for which he paid appellant the sum of two dollars for each treatment. He paid appellant ten dollars in all for such treatments and the examination. These payments were made, sometimes to the appellant and sometimes to a woman whom the witness thought was the appellant's wife. The payments were always made in the presence of the appellant. There were other people present at these different occasions of his visit to the appellant and many of them were seated at like machines and hooked up thereto. There were about six or eight machines similar in form to the one to which the witness was hooked up. This witness was subjected to a rigid cross-examination, but steadfastly maintained that he was treated for this pain in his arm and that he paid two dollars for each treatment, either to the appellant or to the woman whom he took to be the appellant's wife, and in his presence.

Appellant offered no testimony save and except an endeavor to show by a multitude of witnesses that they had been to the home of Mr. Hunt for the purpose of receiving treatments for pains which they might have had throughout their bodies and that they had never paid him anything for any treatment that they might have received for such pains.

It was the appellant's contention, and he offered to prove, that he had these metallic instruments in his residence and that people who had pains repaired thereto and were treated thereby, and eventually secured relief, but that he had made no charge for his services, nor for the services of such machines. This was objected to by the state's attorney, it being offered for the purpose of showing that the witness, Fred Svoboda, had paid nothing for the services that he had received. We think this testimony

was not admissible, being but negative in character. The fact that persons other than Fred Svoboda had been treated free of charge in the appellant's home by these machines would have no bearing on the fact as to whether or not the witness had been treated and had paid appellant for such services.

The case of Hoxsey v. State, 143 Texas Cr. R. 508, 159 S.W. 2d 886, was one of like import to the present. Therein the accused offered to prove that at different times people appeared at his clinic for treatment, but they did not see him do anything, nor did they hear him ask for pay, and neither did they see him receive any pay. The object of such testimony was to rebut the fact that the accused was engaged in the practice of medicine for pay and to re-enforce the legal presumption of his innocence. In that case we held that this evidence although negative in character, might be admissible if it related to the time and place of the alleged treatment by the accused of the various parties named in the information. But in this instance it was not shown that these parties were present at the time the state's witness herein testified that he underwent certain treatments, nor was it shown that their treatments without pay took place prior to the time that the witness Fred Svoboda claims to have paid the ten dollars as set forth hereinabove.

Another proposition arises herein relative to the appellant's bills of exception to matters that occurred in the trial of the case.

There seems to be a difference of some kind relative to the bills offered by the appellant's attorney and their qualifications by the trial judge. However, we think this matter has solved itself by the fact that we find herein filed some bystanders' bills relative to the ones in question that were qualified by the trial judge and the qualifications excepted thereto by the appellant's attorney. We therefore accept the bystanders' bills, as well as the state's bystanders' bills, as we find them presented to us herein and will endeavor to write upon them as they appear in the record, these two sets of bystanders' bills being very similar.

The first bill complains of the information as set forth in the transcript because same does not show that the proper affidavit was not filed by the appellant in the office of the district clerk of Ellis County, Texas, and that it is ambiguous, duplicitous and unintelligible. We are not in accord with such contention. We think it is perfectly plain that it charges that appellant did engage in the practice of medicine for pay and did offer to

treat and did treat a human being for a sum of money without having registered in the office of the district clerk of Ellis County, Texas, his license from an authorized Board of Medical Examiners of the State of Texas, showing his authority to so practice, together with the affidavit showing his age, postoffice address, place of birth, school of practice to which he professes to belong, etc.

Bill of Exception No. 2 is to the same effect and is subject to the same ruling. Bill No. 3 also complains of the information and is overruled. Bill No. 4 seems to relate to an unimportant matter.

Bill of Exception No. 5 has heretofore been treated by us as being the one shown in the statement of facts relative to the many persons who claimed to have been treated by the appellant in his home and that he charged no fee for such treatments, nor did he receive pay in any instance.

Bill No. 6 complains of the overruling of the motion for a continuance in this cause. It is shown therefrom that appellant was notified by the county attorney that this cause would be set for a certain date, and there is no denial herein that this notice was received by the appellant through the mail. Upon the date set for trial, which was December 3, 1953, the appellant's attorney appeared in court at 9:00 o'clock in the morning and announced that he would not be able to attend the trial; that he had a case on that date in the Texas Court of Civil Appeals at Waco, Texas, and it was necessary that he should be present in that court in the morning of December 3, 1953. Whereupon the trial court set this cause over to the hour of 1:00 o'clock P.M., on December 3, 1953; and appellant's attorney then stated that he should be able to return at such time and be able to try the case; that at 1:15 o'clock on said date the appellant's attorney not having returned, the appellant was asked if he desired the appointment of a further attorney and appellant declined such appointment; that at 1:50 P.M., the court directed the county attorney to proceed with the examination of the jury panel, and he had just finished his examination thereof as the appellant's attorney came into the courtroom. The court informed the appellant's attorney at to what had happened and directed that he proceed with the examination of the jury panel; that such attorney then proceeded to examine the jury panel at great length and in great detail. We think it is shown from the statements in the bill, as well as from the statements of the court, that the examination of the jury panel

by the state's attorney prior to the appearance of the appellant's attorney in court did not in any way injure or infringe upon the rights of the appellant in this matter.

Bystanders' Bill No. 10 seems to be one complaining because "the jury returned a verdict of guilty against the defendant, contrary to law and evidence." We think this is a matter to be ascertained by this court, and should the same have been signed by the trial judge and he thus affirmed such statement, of course, there would be no necessity of this cause coming to the appellate court.

Bystanders' Bill No. 11 relates to the introduction of a receipt from Forrester Hancock (appellant's attorney) to J. A. Hunt, which evidenced that he (Hancock) had been paid $100.00 on retainer for this misdemeanor lawsuit. This matter was not in issue at the time and had no bearing on the case except it showed that Hancock was the appellant's attorney, which was known to all parties and was recognized by them in all the dealings in this cause. This bill, which contains many pages of type-written matter, is based upon the fact that the appellant's attorney was not present in court at the time the jury panel was interrogated by the state's attorney, but was present and interrogated them at great length prior to their selection. The testimony set forth therein also showed that the appellant's attorney was present in Waco, Texas, well before the noon hour and that he suggested that he would be back in Waxahachie, where this case was tried, at one o'clock; that he failed to reach the courtroom until 1:50 P.M., at which time he did appear and took charge of the defense in this case.

Bystanders' Bill No. 12 also relates to the fact that appellant's attorney had absented himself from the city of Waxahachie at the time this cause was set for trial and did not return until 1:50 P.M., at which time the state's attorney had questioned the jury panel but no juror had been taken or selected, and that at such time the appellant's attorney questioned the jurors at length and finally accepted certain ones in this cause. Appellant had had notice since November 16, 1953, that this case was set for December 3, 1953, in the district court at Waxahachie, Texas; that appellant's attorney was present at such time in such court but absented himself voluntarily to go to Waco, Texas, to be present at a civil case in which he was engaged and which was dismissed by that court for want of prosecution before his arrival there; that he came back and took charge of this case and tried it as the record shows throughout.

At that time the court warned him that "your client will be tried if you voluntarily absent yourself," and appellant's attorney answered, "I am not going to run off; I am going to the Civil Appeals Waco Court, at Waco." When asked by the court as to when he would return the attorney said, "Assuming that I do not have an accident, by 1:00 o'clock at the latest." It was 1:15 o'clock or thereafter before the court called this case. There is practically no difference between the appellant's bill as qualified by the court and his bystanders' bill as herein presented and the answer by the court to the bystanders' bill. We see no error in such bill.

Aside from the matter of continuance, the only question in the case so far as we can see is whether or not appellant had a right to show by various and sundry persons that they voluntarily came to his home and requested treatment upon his part by these machines and that he granted such requests and charged nothing therefor. We think that would be negative proof as to whether or not he did charge the state's witness, Fred Svoboda, for the treatments received by him with these machines at the appellant's suggestion.

It is worthy of note that the testimony of Svoboda is not denied by any person, and that according to such testimony, there were from four to fourteen persons present at different times while he was in the appellant's home and being treated.

Under the testimony herein presented by the state, the appellant was a practitioner of electrical therapeutics as set forth in Larson v. State, 106 Texas Cr. R. 261, 285 S.W. 317. The only attempted defense herein is to show that no fee was charged for such treatments. This matter of a charged fee was not denied, and was affirmatively shown by the state's proof and so found by the jury.

We see no error herein, and the judgment will be affirmed.