James MAKARSKI, Appellant,

v.

The STATE of Texas, Appellee.

No. 41933.

Court of Criminal Appeals of Texas.

March 12, 1969.

Kenneth R. King, Tyler, for appellant.

Ralph Prince, Dist. Atty., Longview, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for robbery; the punishment, eight years.

The appellant challenges the sufficiency of the evidence to show that he was present at the scene of the robbery at the time it was committed or that he was acting with Jerry Malone as a principal in the commission of the robbery.

The evidence of the state reveals that shortly after 10 p. m., Sunday night, March 17, 1968, C. C. Simmons and his sister, Mrs. Annie Jones were at his home in White Oak, Gregg County, when Mrs. Jones heard a knock at the front door. Upon going to the door, a man, later identified as Jerry Malone, asked to use the telephone. After he was shown the telephone, he pointed a pistol at Mrs. Jones and announced, "Stand still, this is a holdup." While in a room with Mrs. Jones and Simmons, Malone tapped on the window with the pistol. During this time, Mrs. Jones escaped from the house going to the next door neighbor, Carrington, and told him of the robbery in progress. After the officers were notified, Carrington, with a .22 caliber rifle went to his garage where he could see the rear of the Simmons house. Upon seeing a small man near the rear door, Carrington shot at him two times. After the shots, the man fell and began yelling, "Oh." At this time Malone was beating Simmons with a pistol and robbed him of at least $250 in money. When Simmons was near the back door, he heard a man groaning and moaning just

outside the door. Upon looking through a window, Simmons saw a small man on the ground. Malone and Simmons went out the back door into the yard where Simmons saw a man lying down and groaning. The man Simmons saw on the ground was about the size of the appellant. Simmons was again beaten and lost consciousness. Mrs. Jones then saw two men going across the driveway at the back of the Simmons house. The larger man was holding and pulling the small one along, and the small one was stooped over. The small man was about the size of appellant. After the arrival of the officers, a large pool of blood was found near the place where the man fell at the back of the house after Carrington shot. A canvas bag of tools including sledge hammers, a long bar, chisels and a hack saw was found against the house at the back door. Simmons had a safe in the house. The appellant was seen in Kilgore in the early part of the night of March 17, and his car was seen parked at the Shack Cafe in Kilgore shortly after 10 p. m., and it was still there about 12:30 or 1 a. m. The appellant was seen about 11 p. m., on the night of the robbery at the East Texas Motel which is about four or five miles from White Oak where Simmons resided. The operator of the motel saw appellant using his telephone at the desk while holding a handkerchief with blood on it to his head. About five minutes after the use of the telephone by the appellant, Sonny Lacy and Spider Smith came to the motel, and Lacy went to a room and soon returned, helping the appellant who had a wound in his head and was moaning as if in pain and they took him to the hospital in Gladewater where he was refused treatment. The officers were notified by radio dispatch that a man had been to the Gladewater hospital wanting treatment for "gunshot" and had left, and gave the license number of the car. When refused treatment in Gladewater, they went to Kilgore where they were intercepted around midnight by the officers who took the appellant on to the hospital in Kilgore. Dr. Allums treated the appellant about mid-night. From his examination including x-rays, he found a puncture type wound of the size which could have been made by a .22 caliber bullet behind and above the eye which took a downward course, and he expressed the opinion that the wound was caused by a .22 caliber bullet.

Proof was introduced that no other injuries caused by gunshot wounds were reported to the officers in the area on the night of the robbery of Simmons.

The court charged the jury upon the law applicable to principals and circumstantial evidence.

■ The facts and circumstances in evidence were sufficient to warrant the jury to find the appellant guilty of the offense of robbery by assault.

■ The appellant contends that: "The Court committed material error calculated to injure the rights of the Defendant in admitting into evidence State's Exhibits 11, 12 and 13 (three x-rays) and the testimony of Dr. Allum based thereon in that such exhibits were prepared by a person who was not subject to cross examination by the Defendant and was therefore hearsay and said testimony of Dr. Allum was based on hearsay evidence."

Dr. Allums testified that from his physical examination of the appellant he found a wound in the right temporal region which was above and behind the eye with a puncture type wound which took a downward course, and that the x-rays made of the appellant at the hospital were at his request and under his direction and supervision which he personally read. The evidence reveals that the appellant, who had previously been a patient of Dr. Allums, was treated at the hospital; that one of two technicians at the hospital made the x-rays while Dr. Allums was either in the x-ray room or the hall when they were made. The x-rays were identified and exhibited at the trial as those ordered made of the appellant. The evidence was sufficient to authorize the admission of the x-rays in evidence. No error is shown.

■ It is contended that it was error to admit the testimony of certain law enforcement officers that no reports were received by them of a person other than the defendant having been shot on March 17 or 18, 1968, for the reason that such testimony infers that the appellant was shot by E. B. Carrington.

Art. 782c, Section 1, Vernon's Ann.P.C., provides:

"Any physician attending or treating a bullet or gunshot wound, or whenever such a case is treated in a hospital, sanitarium, or other institution, the administrator, superintendent, or other person in charge shall report such case at once to the police authorities of the city, town, or county where such physician is practicing and/or where such hospital, sanitarium, or other institution is located."

The testimony complained of was given by a Chief Deputy Sheriff and three Chiefs of Police in the area where the robbery occurred. This testimony was admissible under the facts of this case. No error is presented.

The judgment is affirmed.