**Virgil CRAWFORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–82–0171–CR.**

Court of Appeals of Texas, Amarillo.

April 16, 1984.

Discretionary Review Granted Jan. 16, 1985.

Clifford W. Brown, Mike Brown, Brown, Harding, Fargason & Brown, Lubbock, for appellant.

Travis Ware, Marta Rosas, Sp. Prosecutors, Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

A jury convicted appellant of rape of a child, section 21.09 of the Penal Code,[1] and assessed his punishment at eight years in the penitentiary, probated, and a fine of $10,000.00. Appellant attacks the conviction by six grounds of error, contending the trial court erred in failing to require the State to elect which act of intercourse was being relied on for conviction, in giving an erroneous limiting instruction on extraneous offenses, in granting the State's motion for change of venue and denying appellant's motions, and in refusing to admit rebuttal evidence tendered by appellant. We agree that an election was required and

that the limiting instruction was erroneous; therefore, we reverse and remand.

As pertinent here, the single-count indictment charged that appellant:

> on or about the 28 day of September, A.D. 1979, and anterior to the presentment of this Indictment, in the County and State aforesaid, did then and there knowingly engage in sexual intercourse with [B____ A____], a female then under the age of 17 years, and not then the wife of the said defendant. . . .

B.A. was employed by appellant to clean his office and occasionally perform various other work for him. She testified that she and appellant had sexual intercourse numerous times over a three-year period beginning when she was 12 years old and ending on September 27, 1979, when she was 15 years old. The majority of the acts of intercourse occurred in appellant's office, although other locations were occasionally utilized. On most occasions, she would report for work, perform her assigned employment duties, have intercourse with appellant in his office, receive compensation and return to her home. The acts of intercourse she related nearest the September 28 date alleged in the indictment were on September 18, 19, 20, 21, 23, 26 and 27.

■ By his first ground, appellant contends the trial court erred in not requiring the State to elect the act of intercourse upon which it was relying for a conviction under the indictment. Appellant first brought the matter to the attention of the trial court when B.A. testified, and the court indicated it would give a limiting instruction at the proper time. When the State rested, appellant, outside the presence of the jury, again asked that the State be required to elect and state specifically which offense, of the many presented, was relied on for a conviction. The court then advised counsel, but not the jury, that the State would be limited to the acts occurring

---

**1.** Tex.Penal Code Ann. § 21.09 (Vernon 1974), *as amended by* 1975 Tex.Gen.Laws, ch. 342, § 8, at 914. The statute was repealed by 1983 Tex. Gen.Laws, ch. 977, § 12, at 5321, effective as to offenses committed on or after September 1, 1983. *See now* Tex.Penal Code Ann. §§ 22.011, 22.021 (Vernon Supp.1984).

between September 18 and September 27. Appellant excepted to the ruling because it did not limit the State to a specific date. Later, he lodged the same objection to the jury charge, which authorized a conviction if the jury found that appellant committed the crime "on or about the 28th day of September...." [2]

■ When the State alleges one offense in a single-count indictment and presents evidence of several separate acts, each sufficient to support a conviction under the indictment, it must elect the act upon which it is relying for a conviction. *Crocker v. State*, 573 S.W.2d 190, 198 (Tex.Crim.App. 1978); *O'Clair v. State*, 364 S.W.2d 375, 376 (Tex.Crim.App.1963); *Bates v. State*, 165 Tex.Cr.R. 140, 305 S.W.2d 366, 368 (1957); *Banks v. State*, 93 Tex.Cr.R. 117, 246 S.W. 377, 378 (1922). In *Bates*, for example, the defendant was charged in a one-count indictment with statutory rape. He was convicted after the State proved he had sexual intercourse with the prosecutrix several times within the year prior to return of the indictment. The Court regarded each act of intercourse as being a separate, completed offense, and therefore reversed the conviction because the State had not been required to elect and rely on one of the acts as the crime alleged by the indictment. *See discussion in Crocker v. State*, 573 S.W.2d at 198.

■ In this case, the State presented evidence of numerous acts of intercourse between appellant and B.A. Each act of intercourse was, under the State's evidence, a separate crime. Thus, under the well-settled rule discussed above, the State should have been required to elect and select the specific act upon which it was relying for conviction under the indictment, and the jury should have been instructed accordingly. *Bates v. State, supra.*

■ The State contends the September 18–27 limitation orally imposed by the trial court was a sufficient election because the

acts that occurred during that time constituted a single transaction. However, each of the acts during the time span in question was, as discussed above, a separate, distinct and completed crime. Each time after B.A. and appellant engaged in sex, they went their separate ways. B.A. testified she was not coerced and could have ended the relationship at any time. Thus, as in *Bates, supra,* an election was required. *McNutt v. State*, 168 Tex.Cr.R. 27, 322 S.W.2d 622, 624 (1959), upon which the State relies, is inapplicable. The issue in that case was the admissibility of the extraneous offenses, not the requirements for an election, and the State was not asked to elect. Ground of error one is sustained.

By his second ground of error, appellant contends the trial court erred in failing to give the jury a correct limiting instruction on the various extraneous offenses about which B.A. testified. As discussed above, the State presented evidence of numerous acts of intercourse between appellant and B.A., beginning when she was 12 and ending when she was 15. When evidence of the first act was offered, the State conceded the extraneous nature of the evidence but told the Court it was tendered to show appellant's unnatural attention toward B.A. and the probability that the act occurred. The Court admitted the evidence, observing that it would give the jury a limiting instruction. The State then presented evidence of numerous acts of intercourse.

By paragraph 4 of the charge, the trial court charged the jury on the extraneous offenses as follows:

> You are further charged that if there is any evidence before you in this case tending to show that the defendant herein committed offenses other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and believe, beyond a reasonable doubt, that the defendant committed such other offenses, if any were committed, and if you

---

**2.** When an indictment alleges that an offense occurred "on or about" a certain date, the State may prove that the offense occurred on any

date not outside the statute of limitations. *Ellis v. State*, 167 Tex.Cr.R. 87, 318 S.W.2d 655, 656 (1958).

find and believe beyond a reasonable doubt from such testimony that other offenses were committed, then such testimony still cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the weight you will give his testimony, and you will not consider the same for any other purpose.

The instruction, says appellant, is erroneous because it permits the jury to use specific acts of misconduct to test appellant's credibility as a witness, instead of limiting the jury to consideration of the acts for the purpose for which they were admitted. We agree.

■ In cases involving sexual offenses with children, the general rule against admission of extraneous offenses is often abrogated. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). Related offenses are admitted for the specific purpose of aiding the jury in deciding "whether the particular act relied upon by the state was committed," *Bates v. State, supra,* 305 S.W.2d at 368, and for other narrow purposes. *See, e.g., Garcia v. State,* 573 S.W.2d 12, 16 (Tex.Crim.App.1978). When such extraneous offenses are admitted, however, the jury must be instructed on their purpose and told that it can consider them only for the limited purposes for which they are admitted. *Hitchcock v. State,* 612 S.W.2d 930 (Tex.Crim.App.1981); *Sparks v. State,* 366 S.W.2d 591, 592 (Tex. Crim.App.1963). An instruction permitting the jury to use the extraneous offenses to test the defendant's general credibility as a witness is erroneous, *Sparks v. State, supra,* absent unusual circumstances not present in this case. *See, e.g., Taylor v. State,* 612 S.W.2d 566, 572 (Tex.Crim.App. 1981).

■ The instruction given in this case permitted the jury to use the extraneous offenses to pass upon the weight to be given appellant's testimony. Such an instruction is, within the context of this case, comparable to an instruction that the offenses can be used to test appellant's credibility. As such, it violates the foregoing principles and fails to correctly limit the jury's consideration of the evidence. On retrial, after the State elects the offense upon which it will rely for conviction, the court should limit the jury's consideration of any admissible extraneous offenses to the specific purposes for which they are admitted. Ground of error two is sustained.

By his third ground, appellant attacks the foregoing limiting instruction as applied to a rebuttal witness called by the State. When appellant testified, he denied having sexual intercourse with B.A., stating that he had been impotent for the preceding ten years. In rebuttal, the State called a local massage parlor operator who testified that appellant had intercourse with her and with one of her employees within the preceding four and one-half years.

■ Appellant was not entitled to a limiting instruction on the massage parlor operator's testimony, because it was offered to rebut a defensive theory. *Ruiz v. State,* 523 S.W.2d 691, 694 (Tex.Crim.App.1975). Thus, the instruction in question, insofar as it pertains to that testimony, was an error against the State about which appellant cannot complain. *Id.* Ground of error three is overruled.

By grounds of error four and five, appellant attacks the trial court's venue rulings in the case. Appellant was indicted in Terry County in May of 1980. In February of 1981, the trial court granted the State's motion for change of venue and transferred the case to Lubbock County. After a mistrial in April of 1981, appellant, by three separate motions, requested a change of venue from Lubbock County.

We must first determine whether the trial court erred in granting the State's motion for change of venue. The State alleged that appellant was an attorney and a prominent citizen of Terry County and that a fair trial could not be obtained because of existing combinations and influ-

ences in favor of appellant. At the hearing, the State presented evidence that appellant was a prominent long-time citizen of the county, had served as county attorney and had a relative who had worked in the district attorney's office during the events in question and was the district attorney at the time of the hearing.[3] Several State witnesses testified about the community climate and opined that the State could not get a fair trial in Terry County. At least one witness expressed the ultimate opinion that there were influences or combinations of individuals in the community who, if seated on the jury, would be unable to give both sides a fair trial. Appellant presented a number of witnesses who controverted the State's evidence, stating that a fair and impartial trial for both sides was possible and that there were no combinations or influences in favor of appellant. At the conclusion of the hearing, the trial court granted the State's motion.

██ Article 31.02, Tex.Crim.Pro.Code Ann. (Vernon 1966), establishes the State's right to a change of venue if, as alleged by the State, it cannot receive a fair and impartial trial because of existing combinations and influences in favor of the defendant. The trial court's decision is tested by the abuse of discretion standard. *See Allen v. State*, 488 S.W.2d 460, 461 (Tex. Crim.App.1972).

██ After reviewing the evidence, we are satisfied the trial court did not abuse its discretion by granting the State's motion. The State presented evidence supportive of the elements it was required to prove, and the court was entitled to believe that evidence, even though it was disputed.

Appellant's motions for change of venue, filed after a mistrial in April of 1981, were based on the contention that there was so great a prejudice against him that he could not obtain a fair trial in Lubbock County. The first motion pointed to the news media accounts of the first trial. The second motion reurged the same ground and added allegations concerning unfavorable publicity about a Lubbock lawyer who had been indicted on a charge of indecency with a child. The third motion reurged the matters stated in the first motion and added allegations concerning inflammatory and erroneous reports about appellant that were broadcast shortly before the second trial.

The trial court conducted separate hearings on each motion. At each hearing, appellant presented evidence supportive of his allegations and the State countered with evidence that he could receive a fair trial in Lubbock County. It is apparent from the evidence tendered by appellant that there was considerable publicity about the case, that some of the information conveyed by the news media was incorrect and that, on several occasions, the electronic media reported matters not in evidence, injected editorial comments into its reports and related events in a manner that created an erroneous impression.[4]

The trial court overruled the first two motions and deferred a ruling on the third until after the voir dire examination. Appellant never obtained a ruling on the third motion.

During the voir dire examination of the jury panel, 52 of the 64 veniremen indicated they had heard something about the case. Those veniremen were questioned individually and eight were seated as jurors. Each of the eight denied having an opinion on guilt or innocence and none of the seated jurors were challenged for cause by appellant. Eleven veniremen were excused for cause, but only one was excused because of the pretrial publicity.

---

3. The district attorney, at his request, was disqualified in this case and a special prosecutor was appointed.

4. The most sensational television story concerned an encounter between the prosecution and defense while the jury was retired during the first trial. According to the television ac-

count, B.A. told the prosecutors she had seen pictures of appellant with teenage prostitutes, taken on one of appellant's occasional trips to Mexico. During a recess, the lead prosecutor threatened appellant with them. Appellant denied they existed, and no such evidence was presented at either trial.

In this Court, appellant argues that the news reports caused such great prejudice in Lubbock County that he could not receive a fair trial. The need for a venue change because of local prejudice against a defendant is predominantly a constitutional question, *Revia v. State*, 649 S.W.2d 625, 626 (Tex.Crim.App.1983), because due process promises a prejudice-free jury. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). Pretrial publicity will entitle a defendant to a venue change if he can show either (1) news media coverage so damaging that it must be presumed no unbiased jury could be selected, or (2) from the totality of circumstances, actual prejudice. *Murphy v. Florida*, 421 U.S. 794, 798–99, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975); *Barefoot v. State*, 596 S.W.2d 875, 881 (Tex. Crim.App.1980), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981); *Von Byrd v. State*, 569 S.W.2d 883, 890–91 (Tex. Crim.App.1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979). We will separately analyze each ground, as pertinent to this case.

Pretrial publicity can be so inflammatory and prejudicial, and so widely disseminated in the community from which the jury is to be drawn, that impaneling an unbiased jury is virtually impossible. In such a situation prejudice is presumed and there is no need to show that the publicity actually contaminated the jury. *Murphy v. Florida*, 421 U.S. 794, 798–99, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975); *Rideau v. Louisiana*, 373 U.S. 723, 724–26, 83 S.Ct. 1417, 1418–19, 10 L.Ed.2d 663 (1963). Texas courts state this test as being "[w]here outside influences [*e.g.*, the news media] affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial." *Morris v. State*, 488 S.W.2d 768, 771 (Tex.Crim. App.1973) (quoting *Pamplin v. Mason*, 364 F.2d 1, 5 (5th Cir.1966)); *see also, e.g., McManus v. State*, 591 S.W.2d 505, 517 (Tex.Crim.App.1979); *Bell v. State*, 582 S.W.2d 800, 811 (Tex.Crim.App.1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981); *Adami v. State*, 524 S.W.2d 693, 703 (Tex.Crim.App.1975). Widespread publicity which, on the whole, is not inflammatory is not inherently prejudicial. *United States v. Haldeman*, 559 F.2d 31, 61–62 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Nor is prejudice presumed from inflammatory news coverage unless it is shown to have permeated the local community. *Mayola v. Alabama*, 623 F.2d 992, 998 (5th Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981). Only once, in *Rideau, supra*, has the U.S. Supreme Court presumed prejudice solely because of publicity; most other courts find it rarely applicable. *Mayola*, 623 F.2d at 997; *Haldeman*, 559 F.2d at 60–61.

When attempting to determine the damage done by pretrial publicity, some revealing factors are:

(1) the nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire.

*Henley v. State*, 576 S.W.2d 66, 71–72 (Tex. Crim.App.1978).

Certainly some facts in this case tend toward a likelihood of prejudice. All witnesses who were asked about the matter agreed that there was considerable publicity about the first trial. Various witnesses also agreed that the indictment of a Lubbock lawyer for indecency with a child would likely have some affect on the community attitude. Additionally, news media reports were not always accurate, and at

times contained information which would never be presented to the jury.

On the other hand, the electronic media reports were rarely over a minute long, and the written articles were rarely displayed in a prominent position in the newspaper. Most of the publicity was about the first trial, which preceded the second by some seven months. *See Sheppard v. Maxwell,* 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). More important, the predominant reason for reporting the story was to inform the public, and on the whole, the stories are accurate, factual, and neutral in tone. *Haldeman,* 559 F.2d at 61; *also see Demouchette v. State,* 591 S.W.2d 488, 490 (Tex.Crim.App.1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981); *Bell v. State,* 582 S.W.2d 800, 810 (Tex.Crim.App.1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981). The stories at their worst do not come close to the viciousness found in *Sheppard,* or the unavoidable incrimination found in *Rideau.* On balance, after reviewing the publicity preceding the second trial, there is no sense that the atmosphere was "utterly corrupted." *Murphy,* 421 U.S. at 798, 95 S.Ct. at 2035. Consequently, we cannot presume that appellant was tried before a prejudiced jury.

 Even if news coverage in itself does not require a presumption of prejudice, the defendant is entitled to a change of venue if he shows that the jury was actually prejudiced. *United States v. Gorel,* 622 F.2d 100, 103 (5th Cir.1979). Direct evidence of juror bias is not necessary, however; it is sufficient if the totality of circumstances leading up to trial show a reasonable probability of a prejudicial jury. The most revealing evidence is the ease with which the jury is selected. *Murphy,* 421 U.S. at 799–803, 95 S.Ct. at 2035–2038; *Irvin,* 366 U.S. at 721, 81 S.Ct. at 1641; *Haldeman,* 559 F.2d at n. 30; *Barefoot,* 596 S.W.2d at 880, *Von Byrd,* 569 S.W.2d at 890.

 In this case, only 12 out of 64 potential jurors were totally uninformed about the case. In the individual voir dire,

however, it is clear that the rest remembered few details. Of the eleven veniremen excused for cause, only one was released because of pretrial publicity. Although eight of the jurors chosen had heard something of the case, each testified he or she had formed no opinion about the veracity of the charges and appellant did not challenge any of them for cause.

When we review the voir dire examination, appellant's evidence that he could not receive a fair trial and the State's evidence to the contrary, we cannot conclude, from a totality of the circumstances, that the trial court abused its discretion by denying appellant's motions. *Ussery v. State,* 651 S.W.2d 767, 772 (Tex.Crim.App.1983); *Roy v. State,* 608 S.W.2d 645, 648 (Tex.Crim.App.1980); *Garcia v. State,* 537 S.W.2d 930, 933 (Tex.Crim.App.1976). Grounds of error four and five are overruled.

 By his final ground, appellant contends the trial court erred in refusing to permit him to present evidence that he had not made sexual advances toward other women, near the same age as B.A., who worked for him. Such negative evidence is admissible only if it is first established that the absence of a fact or the non-occurrence of an event would have probative value. *Makarski v. State,* 439 S.W.2d 340, 342 (Tex.Crim.App.1969); *Hunt v. State,* 160 Tex.Cr.R. 358, 271 S.W.2d 290, 291 (1954); *Russell v. State,* 92 Tex.Cr.R. 114, 242 S.W. 217, 218 (1922). *Cf.* 1 R. Ray, Texas Practice, *Law of Evidence* §§ 683–84 (1980). Under the record, the probative value of the tendered evidence is so slight that we cannot conclude the court erred in excluding it. *See Norman v. State,* 121 Tex.Cr.R. 433, 52 S.W.2d 1051, 1053 (1932). Ground of error six is overruled.

The judgment is reversed and the case is remanded to the trial court.